Judge Marshall

delivered the Opinion of the Court.
In June, 1813, Michael Yates executed a deed to Richard Chiles, in which, reciting that he had agreed to make a competent settlement on his wife, Molly Yates, in consideration of a considerable property brought to him by her—he, in consideration thereof, and of love and affection for his wife, and of one dollar paid by Chiles, conveys to Chiles, several negroes and various articles of personal property : “to have and to hold the said slaves and their increase, and all said property and estate to him, the said Chiles, and his heirs forever; to the use, intent and purpose following, to wit: To be held, possessed and enjoyed to the use of said Molly Yates, during life, and with power and to the use of such person or persons as *492 she shall by last will and testament, or other deed in writing,” (to take effect after her death,) “appoint, and in default of her appointment, to the heirs of said Molly forever.”
Before the 23d day of December, 1825, a part of the trust property had been exchanged by the trustee, with the concurrence of Yates and wife, for other personalties, and another part and the proceeds pf the estate had been given for two adjoining tracts of land, making about eighty five acres, which had been conveyed to Richard Chiles, trustee of Molly Yates, “in trust for the sole and exclusive use of the said Molly Yates, her heirs and assigns forever.” And by deed of the 23d of December, ][825, between the said Chiles and Michael and Molly Yates of the one part, and John Johnson of the other part, the party of the first part, in consideration of the foregoing facts, which are briefly referred to, and of five shillings paid to them by Johnson, bargained, sold and ponveyed so much of the original trust estate as remained, and the personalty which had been substituted for it (the various articles of which are enumerated,) and also the two tracts of land which had been conveyed to Chiles as trustee: “to have and to hold the said land, slaves and personal estate, with the appurtenances unto him, the said Johnson, his heirs &c. for ever. In trust, however, that the said Johnson will permit the said Molly Yates, during her life, to have, use, occupy, possess and enjoy, the estate so conveyed, with the increase thereof, to her own separate use; and to receive and enjoy, as aforesaid, the profits thereof, in case of renting or hiring, and also to permit the said Michael, during his life, in the event that he survive the said Molly, to use, possess and enjoy the said estate, or the proceeds thereof, during his life;” and power was thereby expressly ‘‘reserved to the said Molly Yates, to dispose of the whole or any part of the said estate remaining after the death of herself and husband, in any manner that she may choose, by will or other instrument of writing, and in the event of said Yates and wife dying without such disposition, then the said estate to ]pass in fee simple to her right heirs,” &c. And Johnson covenants to perform the trust, and to convey the estate *493 to whomsoever the said Molly, by will or other instrument in writing, may designate, to take effect after the deaths of herself and husband.
About the end of the year 1833, Molly Yates died, after having duly executed a writing in the nature of a last will and testament, which, being contested by Johnson, was admitted to record. By that will, she disposes of the whole estate, by specific and other devises and legacies, to take effect immediately upon her death, without making any other provision for her husband, than by directing that the land shall be rented out, and the rent retained in the hands of her executors, to be paid to him, from time to time, as they may judge it to be right for his support.
Within a few days after the will was admitted to record, (in June, 1834,) Johnson, the trustee, filed this bill against the executor, Richard Chiles, and all the devisees and heirs of Molly Yates. And, expressing his belief that the instrument purporting to be the last will of Molly Yates, is void, and that she had no power to make such will, and that to permit it to be carried into execution, as the claimants under it are seeking to do, would be a violation of the rights of those whose trustee he conceives himself to be—he prays the advice of the Court, in virtue of its jurisdiction over trusts, and also prays that the defendants, claiming under the will, and those claiming as heirs, he himself being an heir, may interplead; that the Court will decree to whom, and in what manner, he shall convey; and that, in the mean time, the executor pray be restrained from interfering with the property.
Several of the defendants answered, asserting their rights respectively under, and against, the will, and some of them made their answers cross bills, claiming relief.
On the hearing, the Court decreed, in effect, that the deeds of June, 1813, and December, 1825, and the powers therein created or reserved, were valid; and that, under those deeds and powers, the will of Molly Yates was valid and effectual, except so far as it interfered with and attempted to impair the estate and interest secured to Michael Yates for his life, by the deed of 1825; that it vested titles or interests in remainder in the several ap *494 pointees, and that the whole will might and should take effect after the death of said Michael.
A conveyance of slave and other personalty to a trustee, for the use of the grantor's wife for life with a power of appointment to her, and in default of an appointment,to her heirs: held (the point not contested,) that she took a life estate only, not the entire fee simple, in the use.
The consideration recited in deed of trust (supra,) is, that the husband (grantor) had agreed to make provision for the wife, who had brought him property upon the marriage; love & affection for her, and one dollar paid by the trustee: held, that marriage &c. was a good and sufficient consideration to uphold the conveyancien favor of the wife; and the consideration of one dol. paid by the trustee, is sufficient to vest the entire legal estate in him, and support the uses to the wife's appointess: the power is, therefore, valid.
*494 This decree is brought up, for our revision, by the appeal of Johnson; and, by the errors assigned, it is questioned on the merits only, These merits depend, first, Upon the question whether Molly Yates had power to dispose of the estate or any part of it; and second, upon the question whether, and how far, the disposition attempted is valid as an execution of the power. Upon these questions, we shall proceed to express our opinions.
It might be made a question whether the deed of 1813 should be construed as giving to Molly Yates a life es-^ate only in the use of the estate conveyed, with a remainder to her heirs (or next of kin,) in default of a valid appointment under the power therein created, or whether gives to her entire fee simple in the use, with a Power appoint the uses after her death, But the only difference between the one and the other of these constructions, seems to be, that under the first, the power would not operate upon the interest of Mrs. Yates, but upon an interest vested in her heirs, or next of kin, and under the last, it would take effect wholly out of her interest. And as we do not perceive that this distinction, as applied to the facts of the present case, can, so far as the personal estate is concerned, have any material effect upon the question as to the validity, either of the power, or of the execution of it; and as, in either case, the interest of the heirs, whether they are to be considered as purchasers from the donor, or as heirs merely of the donee of the power, must alike yield to a valid execution of a valid power, we assume, as probably correct, the first construction, which is the one contended for on the part of the appellant, and not contested On the other side.
On the first argument of this case, the validity of the Power Contained in the deed of 1813, was objected to, on ground that there was no consideration sufficient to support the uses in favor of the appointees of Mrs. Yates, But, as we do not understand this objection to have been seriously urged on the second hearing, we will, Without entering into any discussion of this very abstruse branch of the subject, barley say that, the pecuniary consideration *495 of one, dollar paid by the trustee, having been certainty sufficient to vest the entire legal estate in him, (as it would have been even in a conveyance of land,) would therefore, seem to subject it as entirely to all the uses declared in the deed, as land would be subjected to such uses, by feoffment with livery of seizin, in which case, a consideration was not necessary. Sugden on Powers, 5. And, as in a conveyance by lease and release, the consideration of a pepper corn was sufficient to transfer the possession to the lessee, under the statute of uses and & release might then be well made to him, without, consideration, though uses were declared in it, (same, 6,) it seems to US that, if the Other considerations mentioned in. this deed, which would certainly support a use to Mrs. Yates in fee, be not of themselves sufficient to support the use in favor of her appointees, still, as in virtue of the statute of uses, the pecuniary consideration of one dollar, vests the possession and legal seizin in the trustee, as completely, as a feoffment with livery would vest it in the feoffee, or as the consideration of a pepper corn would in case of a lease, there would seem to be no’ greater necessity for any further consideration to support all the uses, declared in this case, than there would be in the others. And further, that, as the trustee can have no claim id the beneficial use, and as the grantor has received a valuable consideration sufficient, to pass the entire, fee, and has declared, the uses. in fee, if a valuable, consideration, be necessary directly to support the uses to the appointees, or next of kin, of Mrs. Yates, it should be understood in favor of the manifest intention of the parties, and to give full operation to the deed that the consideration of one dollar, which is sufficient to support a use in fee simple, was paid and received as the consideration of all the uses, and should, therefore, operate in support of all, and of the power to appoint them.
The wife-having a life estate in the property (under the deed of the husband) and a general power of appointment- might, in conjunction with the husband & the trustee, by the deed in proper form and duly executed, dispose of the whole or any part of the absulutely. And- The trustee having disposed of part of the trust property, & purchased other property with the proceeds, it was competent for the same parties to dispose of the property thus acquired, by the same deed.
*495 The power then being, in our opinion, valid, we proceed to, enquire into the nature and effect of the subsequent acts by which it may been executed, abridge, or defeated.
As Mrs. Yates had, by the deed of 1813 a life estate in the property there in conveyed, with a general power of *496 appointing the use after her death she might, undoubtedly; in conjunction with her husband and the trusted, if she could not by her own act, dispose of the absolute right in the whole or any part of it, to her own or any other use. Sugd. on Powers, 119.
A conveyance by the husband and wife and the trustee (ut supra) of the same property, on precisely the same trust and to the same uses, as those specified in the conveyance to the first trustee, would only have the effect of changing the trustee, and the power would remain as before. And, if the new conveyance included other property also, it would be subject to the same &c. But-
*496 Such a disposition would have taken effect in part out of her life estate, and in part by means of her power, The deed of December, 1825, having been executed by all these parties, and having been an instrument sufficient, in its form and mode of execution; to operate either as a transfer of her interest in personal property, of as an appointment under a power relating to that property, and the previous disposition made of a part of the property by the trustee, having been by that deed recognized and confirmed, the power, as well as the interest, of Mrs. Yates was extinguished as to the particular property which had been disposed of And whether the personalty received in exchange for that so disposed of, or purchased with the proceeds or profits of the original fund, by the trustee, be considered as coming of course under the same trust, with the Same power attached, of not, it was competent for the parties above named to subject it to the same trust and power, by deed regularly executed. If it was the property of Yates because it was purchased with his wife’s property—which, however, is not admitted—his deed, without her co-operation, was sufficient; if it became her separate property, by reason of the consideration with which it was purchased, she might certainly have disposed of it, and reserved a power of appointing the future use, by the deed referred to, without privy examination; or if it was already subject to the trust and power first created, she might, by the same' deed, dispose of her interest, and execute the power.
Confining our view, for the present, to the personalty; including the slaves, the question is, how far the deed of 1825 executed, modified or extinguished, the existing power over remaining original trust property, and how far it created a new power, or otherwise disposed of newly acquired property.
If, by this deed, the parties of the first part had conveyed the property to Johnson, on precisely the same trusts *497 and to the same uses as in the first deed, and reserving the same power without modification, this conveyance would have been nothing more than a change of the trustee, with the consent of Yates and wife, as to the property already in trust, and subject to the power, and the subjection of additional property to the same trust and power by Yates and wife and the first trustee, if any such additional property was included. And if such a conveyance should be deemed to be a full execution of the power, as it would only be so in consequence of the uses declared and the power reserved, the uses and power in this deed, must themselves be as valid, under this deed, as any uses raised by the execution of the power, could have been, and the power would have subsisted after, substantially as it did before its execution.
A conveyance (ut supra,) for the use of the the wife for life, and to the use of the husband for life, if he survives her, &c. (a use not specified in the first deed,) was, so far, an execution of the power given to the wife; and-no power of revocation being reserved-any subsequent appointment by her, so far as it inteferes with that, thus made to the husband, would be void.
A general power may be executed by different acts, at differernt times. And where there was a partial execution of the power (by the deed of the deed of the hus band and wife and trustee, supra,) and a subsequent execution of it, attempted by the wile by her last will, which does not make the same provision for the husband — held that the latter execution of the power is void, so far, and so far only, as it is in conflict with the former — as the excess can be clearly ascertained; though, if it could not be, the whole (of the last execution) might be deemed void. And the will, by virtue of the power of appointment given by the husband’s deed, passed that portion of the personal property embraced in the trust, which had not been previously disposed of; but the life estate given to the husband by the deed, being so far a valid execution Of the power of appointment, was, to that extent, a previous disposition of the personal property embraced by it, andwhioh is not, andeauls not be, revoked ortakenaway by the Will.
But the deed of 1825 goes farther than has just been supposed, in appointing a use to Michael Yates for life, if he should survive his wife; after which, it reserves to the latter the power of disposing of the whole estate, by will, or other instrument of writing, and provides that, in default of such disposition, it shall pass to her heirs. The appointment, or the creation of a life estate in Micheal Yates, was of course, a partial execution of the power, by which, as no power of revocation is reserved, it was so far exhausted, as that any future appointment must have been inoperative and void, so far as it interfered with his interest. And if what follows is a full execution of the pre-existing power, it is only so because it is a valid reservation of a power equal to or greater than the first.
It is well settled, and is entirely consonant with reason, that a general power maybe executed by different acts, at different times. 4 Kent’s Commentaries, 334. Now, this must be, either because the power is not exhausted by a partial execution, though there be no reservation of *498 further right, or because it is not exhausted though there be such reservation. And in the present case, it would seem necessarily true, that, if this reservation is valid, and operates at all, it preserves or gives the right of disposing of the estate not previously disposed of or that, if it be invalid and inoperative, it is no execution of the power, and therefore leaves it as it was before, except that the partial execution of it in favor of M. Yates, imposed, so far, a restriction upon any future execution of it, or was, so far, an exhaustion of it.
Which of these alternatives is the true one, seems to be of little consequence. For whether the case resulting from a comparison of the deed and will, be considered as a conflict between two acts of the same agent, acting under the same power, or as ah excess committed by the agent in executing a power reserved by herself under the first power and in the first execution of it; as in either alternative, the first act is valid and obligatory and as in either alternative, what might be done after the first act, is plainly and practically distinguishable from what might not be done; so that the extent of the conflict between the two acts under the old power, or the, extent of the excess in the execution of the new power, may be easily and perfectly ascertained, we think that reason and the analogy of similar cases lead to the same conclusion, that the last act is inoperative and void, only to the extent of the conflict or excess, and is valid as to the residue.
This is not a case of the defective execution of a power. The instrument is perfect, and the intention clearly and properly expressed, and the only question is how far it can operate. If the excess could not be ascertained, there might be some reason in saying that, the whole should be deemed void. But where the line is plainly marked, it seems unreasonable that what is rightfully done, should be destroyed by that which is void for want of authority merely.
The case is, that Mrs. Yates, having power to appoint the whole use in fee, after the death of her husband, appoints the whole to take effect at her own death, without regard to the fact that her husband still lived, or to the life interest secured to him.
The cases decided in England, upon the leasing pow- *499 era of tenants for life, and others having limited interests, do not, in our opinion, determine this question; which seems more analagous to a case in which an agent executes, in the name of his principal, an obligation to convey a life estate to A, and afterwards executes a similar obligation for the conveyance of an immediate fee in the same land to B. If the last bond would be enforcible in equity, against the principal, in case the first had never been given, surely neither he, nor his heirs, nor any person claiming under him by title subject to the power, could resist it as being void in toto because of the first bond. They would have no equity against either bond, but the only conflicting equities would be those of the claimants under the two bonds. This case, of the two. bonds, might be varied so as to make the first approach more nearly in effect to the deed of December, 1825; but the result would seem to be the same, that neither the principal, nor his heirs, nor others claiming under him by title subject to the power, could say that the last bond was wholly void, either because it conflicted in part with the first, or because, although it did not exceed the original power, it exceeded the power remaining after the first bond, or reserved in it. And as, in such a case, neither the principal nor those claiming under him by title subject to the power, could claim any interest in the land on account of this conflict or excess; so, in the present case, as both the deed of 1825 and the will of 1833, are in themselves, in all respects sufficient, under the power, to bind the estate which is subject to it, neither the donor of the power, as such, nor the heirs of the donee, whose title is subject to it, can claim any interest in the estate on account of the alleged conflict, or excess, in the execution of the power.
Upon the whole we are of opinion that, the will, or the instrument in the nature of a will, executed by Mrs. Yates, being perfect in its form and mode of execution, is valid, so far as it relates to the personal estate and slaves, as an appointment under her power as then existing, and is obligatory upon her trustee and heirs—except to the extent that it disregards or impairs the interest of Michael Yates, And therefore, that they have no right to com *500 plain of the decree of the Circuit Court, so far as it relates to the personal estate. But the question as to the land stands upon different grounds.
An estate cannot pass by an appointment under a power, unless it could have passed by the deed or instrument creating the power: the appointment operates as if it had been inserted in the original deed. So—
In this case, where a husband had conveyed slaves and other personal property in trust, for the use of his wife for life,then to such uses as she should appoint by will or deed in writing, and in default of such appointment, to herh’rs; and the trustee disposed of apart of the property and its profits and, with the proceeds, purchased land which was conveyed to the life in fee; and the afterwards executed a deed (but which she did not acknowledge upon privy examination,) in. Which her husband and the trustee joined,as grantors, & which recognized and sanctioned the disposition of the personal property by which the land was purchased; and which purports to convey the land to a trustee far the use of herself for life, and her husband for life, if he survived her &c. and afterwards made a will, by which she devised the land to the others directly, without regard to the use provided for the husband: held that, as the deed recited and sanctioned the purchased land with a part of the trust property, it is evidence of a valid execution of the power reserved to the wife thus far; as the was convey ed to her by deed in fee, and she could not, during the coverture convey the land, or raise any new power or use upon it, otherwise than by deed duly executed and upon privy examination-the deed so far as it relates to the land, is invalid; and, as a feme covert in this State, cannot devise land by will, unless under a power reserved, the land did not pass by the will, but decended to the heirs of the feme.
*500 The land never belonged to Michael Yates, and was. not included in his deed of 1813. Neither he, nor the, first trustee, Chiles, who held it as trustee, had a right to declare any new uses in it, or to subject it to a new power. The deed of 1825, therefore, as the act of Michael Yates and the trustee, could not change the condition of the land from what it was before. If it was not before subject to the power, it was held in trust for the exclusive use of Mrs. Yates and her heirs. Any power of disposing of the future use, then created, must have operated upon, or had its effect out of, her interest. It must have been a power to dispose of her interest. And, as she had no power by law to dispose of her interest in land without privy examination, but'was actually incapable of doing so, it would be absurd to say, that she could, by her own act, without privy examination, create such a power, either in herself or in another. This would be permitting her to dispose of her interest, in fact, without privy examination, and would be a palpable evasion or violation of the law, not authorized, nor capable of being authorized, by any principle belonging to the particular subject of powers.
It is a familiar principle applicable to the execution of powers, that, the estate cannot pass by appointment under the power, unless it could have been passed by the deed or instrument creating the power, and that the appointment operates as if it had been inserted in the original deed. Subjected to this test, the deed of 1825 did not, and could not, authorize Mrs. Yates to dispose of the land by the will which she afterwards made. And the question is, had she power to do so independently of that deed, or before its exception?
The existence of such a power is contended for, as re-resulting from the fact, that the land had been purchased by the Trustee, with the proceeds or profits of a part of the personal estate included in the deed of 1813, or in exchange for if. This fact is recited in. the deed of 1825, which also recites that, this, exchange or purchase was made by the trustee, with the consent of Mrs, Yates and *501 her husband; and this recital implies, that the conveyances of the land to the trustee, which are the evidences of the purchase, were also consented to; and they thus be. come the evidences of the terms on which the personal property exchanged for the land, was freed from the trust and power to which it was previously subject. As Mrs Yates, by virtue of her interest and power, might, at least with the consent of her husband and the trustee, have made any disposition she pleased of the whole or any part of the original trust property, so as to vest it m herself absolutely, or in another, either without consideration, or upon a consideration, in money or other thing to be paid to her directly, or to any other for her use, or for such uses as she might choose, with or without a reservation of power to herself (Sugden on Powers, 119,) and as the recitals above mentioned, connected with the t deeds to which they refer, are evidence of a disposition of a part of the trust property, for lands to be held in trust for the exclusive use of herself in fee simple, there is neither any necessity, nor indeed any room for implying any further trust or power.
If Mrs. Yates had, by deed, to take effect after her death, appointed the use of the entire trust property to A, and if, moreover, she and her husband, and the trustee had transferred to A, her life interest, and A, in consideration of all this, had conveyed a tract of land to her and her heirs, or to her trustee for her, in fee, without any further use or reservation of power, could she, or her appointees, have claimed, that, though her original power was exhausted by a full execution of it, and no other had been created or reserved, either in the deed executing the power, or in that conveying the land, she still had a power independent of that which her interest in the land gave her? It would be impossible, as it seems to us, to account for the existence of such a power under such circumstances.
The original power being completely exhausted by the transfer of the original estate, and the consideration of that transfer having come to the use of the person who was entitled to it absolutely, there would be no ground left for implying any other use or power than such as was actually reserved in the instruments by which the transact *502 tion was effectuated. The case, as it occured, is not substantially different.
The trust estate is liable to the debts contracte d for the wife, during her life, in pursuance of the trust,
In the case before us, the trust property was probably sold, and the money appropriated to the purchase of the land, which separated the two subjects still more widely than if there had been a direct exchange. Another difference is, that the transfer of the trust property in the case before us, may not have been effected by a formal execution, of the power, But there was an actual transfer with the consent of Yates and wife, and the validity of this transfer, which is confirmed by the deed of 1825, and cannot be denied by those who claim the land, on the ground that it wag purchased by means of the sale or exchange of the personalty, implies an execution and exhaustion of the original power, as to the property thus transferred. And the deed of 1825, although ineffectual to transfer, or to create a power of transferring, the interest of Mrs. Yates in land, is certainly competent, in connection with the deeds conveying the land to her trustee, to prove the terms on which he had transferred or consented to that transfer, of the original estate, and to confirm them.
Under these circumstances, we are of opinion that Mrs. Yates must be considered as having taken the uses of the land, as declared in the deed to Chiles, and without any power, and that, not being competent to raise a power out of and over her own interest in the land, unless by deed, on privy examination, the deed of 1825, for want of such examination, was ineffectual to create the power of disposition therein reserved, over the land, and for the same reason, it was ineffectual to secure Michael Yates the use for life in the land, as is therein attempted to be done. And as a married woman is incompetent to devise lands, unless under a power reserved, it follows that the will of Molly Yates is wholly inoperative, so far as it attempts or purports to dispose of land. And consequently, that the decree rendered by the Circuit Court, is erroneous, in giving any effect to it as an appointment of the uses of the land, and also in giving effect to the deed of 1825, as an appointment of the use of the land to Michael Yates during his life.
It need only that, the trust estate is liable to be added that, the trust estate is liable to *503 the debts incurred for the benefit of Mrs. Yates during her life, and in pursuance of the trust.
October, 10.
The decree of the Circuit Court is reversed, and the cause remanded, with directions to render a decree in conformity with this opinion.
The Opinion, delivered at the Spring Term 1839, was then suspended for furthre consideration, and did Hot become final until the Spring Term, 1840.