CURLE
*vs*
CURLE'S ADM'R.

---

## Curle *vs* Curle's Administrator, &c.

ERROR TO THE FAYETTE CIRCUIT.

*Guardians. Preferred creditors.*

CHANCERY.

*Case* 70.

JUDGE BRECK delivered the opinion of the Court.

ABOUT 1835, Clayton Curle, as the father and natural guardian of his infant daughter, Mary C. Curle, obtained possession of a large estate in land and slaves, and

*July* 5.

Case stated.

CURLE
vs
CURLE's ADM'R.

money, to which she became entitled, upon the death, and as heir at law of her half brother, Robert Boggs.

In 1843, Curle died insolvent, his daughter being still an infant, and whose estate he had retained and controlled till his death, no statutory guardian having ever been appointed for her. This bill in chancery was filed by the administrator of Curle, under the act of 1839, regulating the administration and settlement of estates, against his creditors and heirs; and the single question presented for the consideration of this Court, is whether the claim of the infant daughter, Mary, against the estate, is entitled to priority over the claims of other creditors.

The question presented for decision.

This question is involved in the construction of the proviso to the 4th section of the act of 1839, referred to, and which is as follows:

"And provided, further, That the executors of a guardian, of a committee, or of any other person, who shall have been chargeable with, or accountable for the estate of a ward, an idiot or lunatic, or the estate of a dead person, committed to the testator or intestate by a Court of record, shall first pay so much as shall be due from the testator or intestate to the ward, idiot, or lunatic, or to the legatee or persons entitled to the distribution in full, before any proper debt of their testator or intestate shall be paid in whole or in part, and the Court shall so direct."

Does this embrace a natural guardian, or the case before us? The Circuit Court was of opinion that it did not, and that it embraced no guardian to whom the estate of the ward had not been committed by a Court of record. In this construction we do not concur, and think it not sustained by either the letter or the spirit, nor by the object or the policy of the provision. There are evidently three classes of cases, for which the Legislature intended to provide.

1. The executors of a guardian.

2. The executors of a committee—and

3. The executors of any other person, (other than a guardian or committee,) who shall have been chargeable with, or accountable for the estate of a ward, idiot or

lunatic, or the estate of a dead person, committed to the testator or intestate by a Court of record. We are inclined to the opinion, that this last clause, "committed to the testator or intestate by a Court of record," should be construed as applying to and qualifying only the immediate or proximate antecedent, "the estate of a dead person."

If designed to qualify all the preceding classes of wards, lunatics and idiots, as well as "the estate of a dead person," the conjunction *or* before idiot, would probably have been omitted, and it would have read, chargeable with or accountable for the estate of a ward, idiot, lunatic, or of a dead person, committee, &c. So also in the clause which immediately follows, "shall first pay so much as shall be due from the testator or intestate to the ward, idiot, or lunatic, or to the legatee or persons entitled to the distribution," the *or* before lunatic would probably have been omitted. But without deciding whether the clause should be thus restricted, we think it manifest that it does not, as contended, and as supposed by the Circuit Judge, apply to each of the three general classes enumerated, but must be restricted to the third class, the executors "of any other person, who shall have been chargeable with," &c. In that class, it is evident the Legislature intended to provide for other cases than the case of a guardian and a committee—cases where the estates of infants, idiots, lunatics, or of dead persons had by a Court of record been committed to trustees, curators, executors or administrators, or other fiduciaries. The term guardian then, in the first clause of the proviso, is used without qualification or restriction, and as we think, in the most comprehensive sense or meaning of the term, and embraces a natural guardian. The object of the Legislature was to protect and secure the rights of helpless infants. And there is even more reason why the preference should be given them in case of a natural than a statutory guardian, as in the latter case they have the bond of the guardian with personal security.

The father is the natural guardian, and as such, is entitled to the custody of the person, and the control of

The act of 1839, for the distribution of estates on bill filed before the Chancellor, gives a preference to all debts due by the decedent as fiduciary, and embraces debts due by a father on account of funds received as natural guardian of his child.

The father is the natural guardian of his infant

child, and is en-
titled to the cus-
tody of his infant
child, and his
real estate.

the real estate of his infant child. And although the receipt by him in that character, of the estate also of such child, in slaves and personalty, may not have the effect to exonerate the executor or administrator from liability, yet having so received it, we think it should be considered and treated as being in his hands in that character, and that the claim of the child in this case, founded upon such receipt, as well as upon the profits of the real estate, is entitled to priority over the claims of the general creditors: *Garrett* vs *Talmage,* (1 *John. Chan. Rep.,* 3;) *McKee's heirs* vs *Hann,* (9 *Dana,* 504,) and authorities there cited.

It results from the view we have taken, that the decree is erroneous, and it is therefore reversed, and the cause remanded for further proceedings consistent with this opinion.

*Robertson* for plaintiff; *Robinson & Johnson* for defendants.

