## In re THOMPSON'S ESTATE.

The court, on appeal by a judgment creditor of an heir from a judgment of distribution excluding the heir from any share in the estate because of a release executed by the heir in the lifetime of the decedent, will not review the right of the judgment creditor to appear and contest the distribution of the estate, nor the validity of the judgment, where no cross-appeal was taken from the overruling of the objection to the right of the judgment creditor to appear, nor from the ruling admitting in evidence the judgment roll in the action by the judgment creditor against the heir.

Civ. Code, §§ 215, 913, declaring that a mere expectancy of an heir apparent is not an interest, and that a mere possibility not coupled with an interest may not be transferred, is declaratory of the common law that a mere expectancy not coupled with an interest may not be sold or assigned, so that a release by an heir in the lifetime of the ancestor of his interest in the estate of the ancestor is inoperative.

Probate Code, § 315, providing that distribution may be .made though some of the original heirs, legatees, or devisees may have conveyed their shares to others, and the shares must be assigned to the person holding them in the same manner as they otherwise would have been to such heirs, legatees, or devisees, does not refer to conveyances made by heirs prior to the death of the ancestor, and the county court is without jurisdiction to pass on the validity or invalidity of a release executed by an heir in the lifetime of his ancestor, and the question can only be determined in a court of competent jurisdiction.,

(Opinion filed December 6, 1910.)

Appeal from Circuit Court, Kingsbury County. Hon. ALVA E. TAYLOR, Judge.

Proceedings for the distribution of the estate of Thomas Thompson, deceased. From a decree of the Circuit Court affirming a decree of the County Court distributing the estate to the exclusion of Samuel Thompson, an heir, Charles M. Niles, a judgment creditor of Samuel Thompson, appeals. Reversed, with directions.

*Warren & Warren,* for appellant. *D. A. Crawford,* for respondent.

CORSON, J. This case is before us on appeal by Charles M. Niles, contestant, from a judgment of the circuit court affirming a decree by the county court distributing the estate of Thomas Thompson, deceased, which decree was adverse to the claim of the contestant. On October 27, 1908, a hearing was had in the county court in and for Kingsbury county, on a petition filed by the administrator of said estate, and of which due notice had been given, for the distribution of the estate of the deceased. The appellant, Niles, appeared at the hearing in the county court and presented objection to the distribution of said estate, alleging, in substance, that on the 17th day of January, 1907, he obtained a judgment in the circuit court in and for Kingsbury county, against Samuel Thompson, who is admitted to be one of the heirs of the said Thomas Thompson, deceased, the amount of the judgment being $400, and sets out the proceedings resulting in said judgment.

The said contestant specifically objected to the said final report and petition for distribution for the reason that the said petition sets forth that the said Samuel Thompson had executed a release deed of his interest in said estate, and that the said petition asks that the said Samuel Thompson be excluded from participating in the distribution of the said estate, and the contestant alleges that the purported release is incompetent, irrelevant, and immaterial, and in no way binding upon the court, and in no way invests the court with authority to exclude the said Samuel Thompson from participating in his lawful portion of the said estate, and that, for the purposes of distribution therein, it is void for any purpose except to aid the court in determining what ad-

vancement, if any, was made to the said Samuel Thompson in his lifetime, by the deceased. The contestant therefore asks that the said final report and petition for distribution be denied in so far as it attempts to exclude the said Samuel Thompson from participating in his lawful share of the estate, and that, if distribution is granted under the said petition, the said Samuel Thompson be awarded one-seventh interest in said estate, as by law provided. To the objections of the said Charles M. Niles, Samuel Thompson, together with the other heirs, in answer to the objections to the final report and petition for distribution filed by the contestant, respectfully show to the court, and specially deny the allegations of said objections, except where the same may be thereinafter qualified, explained, admitted, or denied. The answer proceeds to set out the proceedings of said administration, naming the heirs of said deceased, including said Samuel Thompson, and thereupon alleges that the said Samuel Thompson, under the name of Sam Thompson, during the lifetime of said Thomas Thompson, for a valuable consideration, made, executed, and delivered to the said Thomas Thompson, deceased, a release and relinquishment of all his right, title, and interest in and to the estate of said Thomas Thompson, which is in words and figures as follows: "To Whom It May Concern: This is to certify that I have this day received of Thomas Thompson two hundred dollars in full of all claims against him to this date and in full of all claims as heir to his property upon his decease or any part of the same, and I hereby relinquish all my right to inheritance to any part of his estate to such parties as he may name by will or as may by law be entitled to such estate, and direct that such share as would otherwise be inherited by me to be paid over to such other parties as are entitled by law thereto. [Signed] Sam Thompson."

They further allege that said release was given, executed, and delivered in full satisfaction of all the right, title, and estate that the said Samuel Thompson may have in and to the said estate of Thomas Thompson, deceased; that the said Samuel Thompson accepted the consideration therefore in satisfaction and still holds and retains the same; that said release was a valid and binding agree-

ment between the said parties; that the said Samuel Thompson has ratified, approved, and confirmed the said release at all times since its execution and now does so. The answer then contains a description of a quarter section of land in Kingsbury county as belonging to the estate of the deceased, and that the said Samuel Thompson has no interest, right, or title therein. It is further alleged that the said purported judgment of Charles M. Niles against said Samuel Thompson is void and ineffectual for any purpose for certain reasons therein set forth. It then alleges that the only persons entitled to receive a distributive share or part of the estate of said Thomas Thompson, deceased, are the various persons therein named, excluding therefrom Samuel Thompson.

The petition having been heard, and the objections and answer thereto, a final decree was entered distributing said estate, in which it is decreed that the said Samuel Thompson, under the name of Sam Thompson, had executed and delivered to said Thomas Thompson, deceased, in his lifetime, a release and relinquishment of all his right, title, and interest in the estate by the instrument hereinbefore set forth. The county court further decreed that the contestant's claim against the estate is invalid because of the release aforesaid. From this decree of the county court the said Niles appealed to the circuit court, which court, as before stated, affirmed the decree of the county court. A motion for new trial was made in the circuit court and denied.

The errors assigned may be grouped under the four following propositions: (1) That the court erred, as a matter of law, in sustaining the final decree of the county court that the release, purported to have been executed by Sam Thompson, was sufficient in law to exclude the said Sam Thompson from his entire and distributive portion of the estate of Thomas Thompson, deceased. (2) That the court erred, as a matter of law, in sustaining the final decree of the county court that the said Sam Thompson was excluded from any distributive share of the said estate because of said purported release. (3) That the court erred, as a matter of law, in sustaining the final decree of the county court in which said county court assumed jurisdiction to pass upon the validity

and effect of the said purported release, thereby holding that it was within the jurisdiction of the said county court to construe and give effect to said release for the purpose of excluding the said Sam Thompson from his distributive share of said estate; the said release not having been introduced to show what advancement, if any, had been made to the said Sam Thompson by the deceased in his lifetime. (4) That the court erred in overruling appellant's motion for a new trial.

It was contended by the respondents that the contestant had no such interest in the distribution of the estate as entitled him to appear and contest the same; that the judgment rendered in favor of the said contestant against Samuel Thompson was void, and therefore the court was authorized to disregard the said contestant's objections to the decree of distribution of the estate; and that the release executed by him to the deceased, Thomas Thompson, in his lifetime, was a valid and effectual release under which the county court was authorized to exclude the said Samuel Thompson in the distribution of said estate.

The contention of counsel for the respondents that the said contestant did not have such an interest in the estate as authorized him to appear and contest the distribution of the estate, and also the contention of counsel for respondents that the judgment recovered by the contestant against the said Samuel Thompson, are not properly before this court for review, as the objection to the right of contestant to appear was overruled by the county court, and no appeal has been taken thereupon by respondents.

The county court, in its decree, makes the following adjudication: "That the said Samuel Thompson, under the name of Sam Thompson, during the lifetime of Thomas Thompson, for a valuable consideration, made, executed, and delivered to the said Thomas Thompson a release and relinquishment of all his right, title, and interest in and to the estate of the said Thomas Thompson"—setting out the instrument heretofore copied in this opinion. "That the said release and relinquishment was given, executed, and delivered for a valuable consideration and of all said rights, title, and estate that the said Samuel Thompson might have in and

to the estate of the said Thomas Thompson, deceased, and that the said Samuel Thompson accepted the consideration therefor in such release and relinquishment and still holds and retains the same. That Charles M. Niles claims an interest in said estate as a judgment creditor of the said Samuel Thompson, which claim is invalid, because of the release aforesaid. That the only persons entitled to receive a distributive share or portion of the estate of the said Thomas Thompson, deceased, or any part thereof," are the heirs therein named, excluding Samuel Thompson.

It will be observed that, in the decree of the county court, that court assumes the jurisdiction to determine the effect of the said release, and that it adjudges that the contestant claims an interest in said estate, which "claim is invalid, because of the release aforesaid." The circuit court, in its judgment, "finds that the said county court committed no error in said proceedings, and that the final decree entered therein should be confirmed," and thereupon ordered and adjudged that said final decree be affirmed. Objection was also made by the respondents to the admission of the judgment roll in the case of the contestant against Sam Thompson, as inadmissible for the reason that the judgment was void, was overruled by the county court, and as no appeal was taken by the respondents from the ruling of the court, so far as is disclosed by the record, that question is not properly before us for determination on the present appeal. The only questions therefore presented for our consideration on this appeal are as to the effect of the release executed by Sam Thompson, and the jurisdiction of the county court to determine the same.

It will be observed that, by the terms of the release hereinbefore copied, said Sam Thompson releases all his right of inheritance to any part of his estate to such parties as Thomas Thompson may name by will or as may by law be entitled to such estate. The release, therefore, is not in favor of any particular person, but only such parties as the deceased might name by will or might by law be entitled to such estate.

It is contended by the appellant: That the case at bar is not an equitable one, but a case at law, and the principle of equitable

estoppel cannot be applied in favor of the heirs, they not being persons in whose favor any equity exists; and, in any event, equity follows the law and is not supplanted by it. That the law of this state provides two ways only by which property of deceased may be distributed: (1) By the terms of the will of deceased, if he left one; and (2) according to the laws of succession, if he died intestate. And these two methods are exclusive. That releases of expectant interests in property during the life of the owner by an heir expectant are void at law, and against public policy. That an ancestor can disinherit an heir only by will devising his property to some one else. That the case at bar involves an advancement, if anything, being an advancement by the ancestor, receipted for by the heir, and be so considered in law in determining the validity of the purported release.

At common law a mere expectancy not coupled with an interest could not be sold or assigned. There is no statute in this state changing the common-law rule on this subject; but, on the contrary, our statute has adopted the common-law rule as follows: "A mere possibility, such as the expectancy of an heir apparent is not to be deemed an interest of any kind." Section 215, Civ. Code. "A mere possibility, not coupled with an interest cannot be transferred." Section 918, Civ. Code.

It will be observed that the purported release in this case contains no covenant of warranty, and no facts are pleaded which would authorize the respondents to invoke the doctrine of estoppel. Our sections are copies of sections 192 and 461 of the proposed Civil Code of New York, and the code commissioners of that state, in their note to section 461, refer to the following cases as authorities upon which that section is based: Jackson v. Bradford, 4 Wend. (N. Y.) 619; Tooley v. Dibble, 2 Hill (N. Y.) 641; Otis v. Sill, 8 Barb. (N. Y.) 102; Edwards v. Varick, 5 Denio (N. Y.) 664; Miller v. Emans, 19 N. Y. 384.

In the case of Jackson ex dem. L. Thurman v. Bradford, supra, the learned Supreme Court of Judicature of New York held, as appears by the headnote: "Where the heir, previous to the death of his ancestor, conveys by deed all his interest in the

estate of his ancestor, and there is a judgment against the heir previous to the conveyance on which, after the descent of the property, a sale is had, the purchaser at such sale, and not the grantee under the conveyance, takes the land. Although a covenant of warranty would bar by way of estoppel the heir and his issue from setting up title to the estate, such estoppel does not affect the purchaser under a judgment entered previous to the conveyance creating the estoppel." And in the opinion the court, speaking by Marcy, Justice, says: "When these deeds were executed, Price had no title or claim to the premises, and could therefore convey no right to them. * * * A grant by a person who has no estate, as an heir in the lifetime of his ancestor, will not pass any estate. 3 Preston on Abstracts of Title, 25, 26. * * * It is said in the Touchstone (239) that a bare possibility of an interest which is uncertain is not grantable. The expectancy of an heir at law in the life of the ancestor (and such was the defendant's grantor in this case) is less than a possibility. Wright v. Wright, 1 Ves. Sr. 409. Where a son releases in the lifetime of his father, the release is void, because, as Lord Coke says, he has no right at the time of making the release; all the right is in the father, and therefore, after the death of his father, the son may enter into the land against his own release. Co. Lit. 265a. It is very clear, both from reason and authority, that no title passes by the deed of an heir apparent or presumptive to lands that may afterwards descend to him on the death of his ancestor; yet the heir may be barred by his deed from recovering such lands. Where the deed is by warranty, the warranty will rebut and bar the grantor and his heirs of a further right. This is not because a title ever passes by such a grant, but the principle of avoiding circuity of action interposes and stops the grantor from impeaching a title to the soundness of which he must answer on his warranty. Co. Litt. 265a."

In the case of Tooley et al. v. Dibble, supra, the Court of Errors of New York held, as appears by the headnote, that "A quitclaim deed purporting to convey one's 'right of expectancy' or possibility of inheritance will not affect the grantor's title as heir, subsequently acquired."

The law applicable to this case seems to be clearly stated in the concurring opinion of Mr. Justice Strong in the case of Miller v. Emans, 19 N. Y. 384, in which he says: "There is a distinction between possibilities which are releasable and those which are not, which seems to be fairly presented by the instances usually mentioned, although I do not recollect seeing it distinctly stated in any authority. There are some which depend solely upon expectation or presumption, and which may fail through the will of another. Thus there is generally an expectation or presumption that a lawful child of a proprietor of land in fee simple will inherit it, or a part of it, upon the death of the parent. But that may be prevented not only by the premature death of the child, but also by a conveyance or devise to another by the parent. In such case there is no existing right in the presumptive heir, and a release by him would be inoperative. When, however, there is an existing right in one, which cannot be defeated by the volition or action of another, to a future estate upon a contingency, there is something upon which a release might operate."

It seems to have been clearly the intention of the codifiers of our Code, and the Legislature, to adopt the rule as established at common law. In the case at bar, the release executed by Sam Thompson could only be effective, if effective at all, as releasing his interest to the other heirs of the estate of Thomas Thompson, deceased, as it in no manner affected the interest of Thomas Thompson, as he was the fee owner of the property and did not require a release of any kind from his son to perfect his title; but, as stated in the authorities from which we have quoted, at the time Sam Thompson executed the release, the deceased, his father, was living and retained the power to dispose of his property to any one in his lifetime or to dispose of it by will, and the son might not survive his father, and in such case, as we have seen, a release by an heir, apparent or presumptive, is inoperative.

The sections before quoted from the proposed Code of New York (sections 192 and 461), and the sections contained in our Code (sections 215 and 918), were adopted by the state of California as sections 700 and 1045, and the construction given to

these sections in the early cases in New York, referred to in the notes of the commissioners, has been adopted by the Supreme Court of that state.

In Re Wickersham's Estate, 138 Cal. 355, 70 Pac. 1076, 71 Pac. 437, the Supreme Court of California held, as appears from the third headnote of the case: "Under Civ. Code, §§ 700, 1045, providing that a mere possibility such as the expectancy of an heir apparent is not deemed an interest in property, and that a mere possibility not coupled with an interest cannot be transferred, a child cannot, prior to his parent's death, convey his expectancy as heir." In discussing the question presented, that court says: "As to the contract of Frank with the residuary legatees, that doubtless operated to transfer to the grantees his then existing interest in his father's estate; but, so far as it purported to convey his expectant interest in his mother's estate, it was legally void; nor could it operate to transfer to the grantees, upon the death of Mrs. Wickersham, the legal interest of the grantor in her estate. Civ. Code, §§ 700, 1045; In re Garcelon's Estate, 104 Cal. 584 et seq., 38 Pac. 414, 32 L. R. A. 595, 43 Am. St. Rep. 134; 2 Story, Eq. Jur. § 1040b; 2 Pom. Eq. Jur. § 953. He therefore still remained the legal owner of that interest, and of the resulting interest in his father's estate, and the contestants, as his representatives, were entitled to assert it."

In the case of In re Ryder's Estate, 141 Cal. 366, 74 Pac. 993, the court in its opinion says: "In the Estate of I. G. Wickersham, supra, speaking of an attempted conveyance by an heir apparent, this court said: 'It was legally void. Nor could it operate to transfer to the grantee, upon the death of Mrs. Wickersham (the wife of said I. G. Wickersham), the legal interest of the grantor in her estate. He therefore still remained the legal owner of that interest.'"

In Needles' Executor v. Needles, 7 Ohio St. 432, 70 Am. Dec. 85, the Supreme Court of Ohio, as appears by the headnote, held: "Expectation or hope of succeeding to ancestor's property is mere or remote possibility, in which there is no existing right that can be the subject of release." And in its opinion that court says:

"But, aside from these considerations, there is an insuperable obstacle in the way of giving effect to such a contract. The laws of the state have provided the mode for the distribution of a man's property after his decease. All dominion of the owner over it ceases with his life; and it must be distributed according to the bequests of his will, if he has chosen to make a testamentary disposition of it, and, if not, then according to the law of descent and distribution. The owner is always allowed to provide by will for the division and distribution of his property after his decease. And the law has provided regulations, so far as the distribution of the estates of intestates can be affected by previous advancements to children. A man cannot provide for the division which shall be made of his property after his death, by executory contracts with his children, instead of last will and testament. And to allow an intestate to control the course of descent and distribution by mere executory contracts with his children, during his life, would be to allow him to set aside the laws of the state. The property of a deceased person must pass by devise or descent. And the operation of the laws of the land in this respect cannot be defeated by any kind of executory contracts, made for the purpose of controlling or affecting the distribution of a man's property after his death. This opinion is in accordance with the views expressed by this court, in the case of Crane v. Doty, 1 Ohio St. 279."

The learned counsel for the respondents has cited a number of authorities holding that such a release by an heir apparent or presumptive, in the lifetime of his ancestor, is valid and binding upon the heir. But in many of the cases cited on behalf of the respondents, while the contract was held invalid at law, it was held good in a court of equity. Such was the case of Glendening v. Wyatt, 54 Kan. 523, 38 Pac. 792, 33 L. R. A. 278, in which it was held: "Courts of equity will uphold such an agreement of an heir apparent, where it is fairly made, and for an adequate consideration, * * * and is not obtained by fraud or oppression, it may be enforced in equity after the death of the ancestor." In other cases it has been held as an advancement, under the statute relative to advancement made to heirs. Such was the case of

Simpson v. Simpson, 114 Ill. 603, 4 N. E. 137, 7 N. E. 287, as appears by the second headnote, which reads as follows: "The fourth section of the act of 1872 [Laws 1871-72, p. 352] to the effect that if a child receiving an advancement from his father dies before the father, leaving issue, the amount thereof shall be allowed accordingly by the representatives of the son so advanced, as so much of their share of the estate, the same as if the advancement had been made directly to them, is not confined to cases of advancements made to a son after such act took effect, but applies equally to advancements made before that time, when the party making the same dies after the law took effect."

Much reliance is placed by the respondents upon the case of In re Garcelon's Estate, 104 Cal. 570, 38 Pac. 414, 32 L. R. A. 595, 43 Am. St. Rep. 134; but it will be noticed from the second and third headnotes in that case that the decision was placed mainly upon the covenants of the heir not to contest the will and that the same would be enforced in a court of equity. The headnotes read as follows: "A covenant by the heir apparent to relinquish his expectancy in certain property of a relative is not invalid under Civ. Code, § 700, providing that 'a mere possibility such as the expectancy of the heir apparent is not to be deemed an interest of any kind,' and section 1045, declaring that 'a mere possibility not coupled with an interest cannot be transferred'— which provisions are merely declaratory of the common law. A covenant not to contest the will of a relative may be given effect as a release of the contingent right to make such contest, and enforced, when fairly obtained and for an adequate consideration." It is quite clear from the decision that that learned court did not intend to hold contrary to the views expressed in the opinions of that court from which we have quoted.

But assuming that there may be a question as to the rights of the heirs to the share of Samuel Thompson in the estate of his father, Thomas Thompson, we are of the opinion that the county court had no jurisdiction to determine that question in this proceeding, and that, in any view of the case, it was in error in excluding Samuel Thompson's share in the distribution of said

estate. Section 315 of the Probate Code provides as follows: "Partition or distribution of the real estate may be made as provided in this chapter, although some of the original heirs, legatees, or devisees may have conveyed their shares to other persons, and such shares must be assigned to the person holding the same, in the same manner as they otherwise would have been to such heirs, legatees, or devisees." This section is a verbatim copy of section 1678 of the California Code referred to hereafter by the Supreme Court of California.

In Ward v. Du Pree, 16 S. D. 500, 94 N. W. 397, in discussing the question of the jurisdiction of the county court as a probate court, this court says: "The probate court has jurisdiction to determine who are the legal heirs of a deceased person who died intestate, and who are the devisees or legatees of one who died testate; but its determination as to such matters does not create any new title. It merely declares the title which accrued under the law of descents, or under the provisions of the will. The decree of distribution has nothing to do with contracts or conveyances which may have been made by heirs, devisees, or legatees of or about their shares of the estate, either among themselves or with others. Such matters are not before the probate court, and over them it has no jurisdiction." This statement of the law was correct as applied to the case then before the court; but as a general proposition it should be qualified by adding after the words, "either among themselves or with others," made prior to the death of the ancestor.

A similar view seems to have been taken by the Supreme Court of California in the case of In re Ryder's Estate, supra, in which the court in its opinion says: "The opinions of this court are not entirely harmonious as to the authority of the court on distribution to determine, against the objection of an heir, legatee, or devisee, as to the rights of a third person claiming under a conveyance alleged to have been made by such devisee, legatee, or heir"—citing a number of California decisions. That court further says: "It may, however, be conceded, solely for the purposes of this case, that under the provisions of section 1678, Code Civ.

Proc., the court on distribution may determine disputes between heirs, legatees, or devisees and persons claiming to be the grantees of their shares under conveyances made by them, although the determination of such disputes would not ordinarily be within the functions of the probate court. If such authority exists, it rests solely upon the provisions of the section, and is limited by its terms. Martinovich v. Marsicano, supra (137 Cal. 354, 70 Pac. 459). But this section includes only conveyances of their shares made by 'heirs, legatees, or devisees,' and has no reference to conveyances made prior to the death of the deceased by persons who were not at the time of the conveyance either heirs, legatees, or devisees, and who then had no interest in the property that was capable of being conveyed. Civ. Code, §§ 700, 1045; Estate of Garcelon, 104 Cal. 584, 38 Pac. 414, 32 L. R. A. 595, 43 Am. St. Rep. 134; Estate of I. G. Wickersham, 138 Cal. 355, 361, 70 Pac. 1076."

Clearly under these decisions the county court was without jurisdiction to pass upon the validity or invalidity of the release executed by Sam Thompson. That question can only be properly determined in a court of competent jurisdiction.

The judgment of the circuit court is therefore reversed, and it is directed to enter judgment modifying the decree of distribution entered by the county court, in such manner as to include the said Samuel Thompson as distributee with the other heirs of Thomas Thompson, deceased.