## ARMSTRONG et al. v. LETTY et al.

No. 9974—Opinion Filed March 14, 1922.

(Syllabus.)

**1. Indians—Wills—Execution—Attestation.**

The approval and acknowledgment of the will of a full-blood Indian required by act of April 26, 1906, 34 Stat. 137, sec. 23, as amended by the act of Congress of May 27, 1908, 35 Stat. 312, sec. 8, is not an element of the execution and attestation contemplated by the statute of Oklahoma, and is not within the purview of the jurisdiction of the county court in admitting a will to probate.

**2. Same—Alienation of Restricted Land by Will.**

The approval and acknowledgment of the will of a full-blood Indian required by the act of Congress is a requisite to the validity of the devise of restricted lands, and is not an element of due execution and attestation of the will of such Indian.

**3. Wills—Probate—Issue.**

In a proceeding to probate a will under Rev. Laws 1910, secs. 6210, 6211, the only issue triable is the factum of the will, or

the question of devisavit vel non. Letts v. Letts, 73 Oklahoma, 176 Pac. 234.

### 4. Same—Issues Determined on Admission to Probate.

The decree admitting a will to probate determines that the will is in form and terms sufficient to pass realty, but does not determine title actually passed.

### 5. Same—Judgment—Probate of Will of Full-Blood Indian—Effect.

The judgment of the county court probating a will is conclusive only as to the matters within its jurisdiction on such hearing. A county court has no jurisdiction upon such hearing to construe the validity of any devise thereunder or to determine the effect of the will as a conveyance of real estate. A will of a full-blood Indian may be admitted to probate in the county court, yet such probate is not conclusive upon the right of such Indian to devise real estate, and the heir, upon ejectment brought to recover the land attempted to be devised, may call in question the legal effect of the will as a muniment of title, and show that it was ineffectual to pass the estate because no power to make such will had been acquired by the testatrix as prescribed by law.

### 6. Indians—Alienation of Restricted Lands by Will—Judgment.

The judgment of the county court admitting to probate the will of a full-blood Indian, which disinherits the father of such Indian as to the allotment of the decedent, and which has not been acknowledged and approved as required by act of the Congress, is not a bar to the action in the district court by such parent for possession of the inherited lands.

### 7. Same—Statute—Construction—Estoppel.

A will which is void as a conveyance of restricted Indian lands because it fails to comply with the requirements of the acts of the Congress providing the manner by which such will must be executed cannot be given validity by the judgment of the county court admitting such will to probate, and the decree of the probate court admitting such will to probate is not available as an estoppel against the lawful heir of the decedent in an action for possession of the lands.

Pitchford, V. C. J., and Kane, J., dissenting.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by John Letty against George W. Armstrong, L. W. Clapp, and others in ejectment and to set aside will and other instruments affecting title. Judgment for plaintiff, and the defendants named bring error. On rehearing, affirmed.

Stanard & Ennis, for plaintiffs in error.

Reuben M. Roddie, Hatchett & Semple, and J. B. Dudley, for defendants in error.

KENNAMER, J. This action was commenced by the defendant in error John Letty, as plaintiff, against the plaintiffs in error and the other defendants in error, as defendants, for the purpose of recovering possession of a certain tract of land situated in Pontotoc county and for canceling and setting aside a certain will and other instruments in writing affecting the title to said real estate. Upon trial to a jury there was a verdict in favor of the plaintiff, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

There is very little, if any, conflict in the evidence on any material point. It appears that the land involved constituted the homestead and surplus allotment of Carry Letty, deceased, a full-blood Chickasaw Indian; that during her last illness the allottee made a will devising the land to Calvin Parnacher, her stepfather, with whom she lived from early childhood, which will was duly admitted to probate by the county court of Pontotoc county; that almost two years after the probate of the will this action was commenced in the district court of Pontotoc county by the plaintiff, who alleged that he was the father of the testator and that the will was void under the act of Congress of April 26, 1906, 34 Stat. 137, section 23, as amended by the act of Congress of May 27, 1908, 35 Stat. 312, sec. 8, because it was not acknowledged before and approved by the officers desnated by the acts of Congress and attempted to disinherit the plaintiff, the paternal parent of the full-blood devisor. The section of the federal statute referred to reads as follows:

"Every person, of lawful age and sound mind, may by last will and testament, devise and bequeath all of his estate, real and personal, and all interest therein; Provided, that no will of a full-blood Indian devising real estate, shall be valid if such last will and testament disinherits the parent, wife, spouse or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory or a United States Commissioner, or a judge of a county court of the state of Oklahoma."

On the other hand, it is contended that:

(1) This action, being an action in ejectment, is a collateral attack upon the judgment of the county court admitting the will to probate and cannot be maintained. (2) The county court of Pontotoc county in the hearing upon the application for the probate of the will of Carry Letty in the exercise of its jurisdiction, lawfully conferred, had to determine the question of due execution and attestation of the will, which involved the question of whether it was acknowledged as required by the act of Congress, and that court's judgment admitting the will to pro-

bate, when not appealed from, is conclusive in a collateral attack. (3) Under our Constitution and laws original jurisdiction to determine the validity or invalidity of the will is exclusively vested in the county court (as a probate court), and a court of equity has no jurisdiction to vacate, set aside, or annul, on any ground; the judgment of the county court on that question."

Two question are involved in this appeal: First, does the action of the county court in probating the will of a full-blood Indian involve a determination of the question of whether the will has been acknowledged in the manner required by the act of Congress? Second, if the probating of the will requires a determination of this question, can the judgment of the county court probating a will, which has not been acknowledged as required by the act of Congress, operate to disinherit the heirs who are protected by said act? We must answer both questions in the negative.

This court has repeatedly held that the sole question involved when a will is offered to the county court for probate is the factum of the will. That is, has the will been executed and attested in the manner and form required by the statutes, and was the testator competent to make a will at the time he made it, and was he free from the disabilities which operate under our statute to defeat the will? Letts v. Letts, 73 Oklahoma, 176 Pac. 234; 28 R. C. L. 379; 40 Cyc. 1373; Taylor v. Hilton, 23 Okla. 354, 100 Pac. 537; Brock v. Keifer, 59 Okla. 5, 157 Pac. 88.

In the case of Brock v. Keifer, supra, Collier, C., delivering the opinion of the court, in the third paragraph of the syllabus, held:

"In a proceeding to probate a will, the court cannot construe or interpret the will or distinguish between valid and void dispositions. If the will be legally executed and proved, and not successfully attacked for want of testamentary capacity, undue influence, fraud, or duress, it must be admitted to probate."

In the case of Letts v. Letts et al., supra, this court, in the fifth paragraph of the syllabus, held:

"In a proceeding to probate a will under Rev. Laws 1910, sections 6210, 6211, the only issue triable is the factum of the will, or the question of devisavit vel non."

The decree and judgment of the county court in probate admitting a will to probate does not involve in the least degree a construction of a will as to its legal effect; therefore, in an action by any person interested in the estate of the deceased for possession of lands affected by the will no question of collateral attack or any other

kind of attack on the judgment of the court admitting the will to probate can be drawn in issue. Quite a different question might arise had the probate court entered a decree of distribution of the estate of the deceased or testatrix upon proper notice to all interested parties, and judgment or decree of distribution necessarily would involve a construction of the will of the testatrix in order to determine the distributive shares of the interested parties, just as it would require of the probate court a construction and application of the laws of descent and distribution where the deceased died intestate, but in the absence of a decree of distribution, the mere admission of a will to probate is not binding upon anyone as to the proper construction of the will, for the obvious reason that until such a decree of distribution has been entered there has been no construction of the will.

The Supreme Court of California in Re Trescony's Estate, 51 Pac. 951, held:

"The decree of distribution was a judicial construction of the will of the decedent, and a determination by the court as well of the persons who were entitled to his estate as of the proportions or parts to which each of those persons were entitled, and was 'conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal.' Code Civ. Proc. par. 1666. The will of the testator was evidence before the court when it was called upon to determine how the estate should be distributed; but, upon the entry of the decree of distribution, that decree became the measure of the rights of the parties interested in the estate, and the will was entitled to no further consideration for that purpose, except upon a direct appeal from that decree. * * *"

So, we conclude that, in the absence of a decree of distribution in the due course of an administration of an estate, no one is concluded by the admission of a will to probate, as such a decree has only the effect of establishing the fact of a will.

The Supreme Court of Alabama, in the case of Baker et al. v. The Heirs of Chastang, 18 Ala. 417, in affirming the judgment of the circuit court of Mobile, had under consideration an ejectment action. The issue involved in the action decisive of the cause involved the effect of the decree probating the will of a married woman. The court in a well-reasoned opinion, after a review of the authorities, held:

"In Kelly's Devisees v. Kelly, 5 B. Monr. 369-70, the court says • 'How far the power, if it exists, may have been pursued or exceeded, or how far the will may be available, as a disposition of property under the power, are ulterior questions, not necessarily nor

properly presented for decision in the court of probate.' So, also, in Johnson's Trustees v. Yate's Devisees, 9 Dana, 491, some of the devises in the will were held to be inoperative, after the will had been admitted to probate, because they exceeded the power of the testatrix.

"In Holman v. Perry and others, 4 Metc. Rep. 492, the court, after stating the law to be that to make a devise by a married woman of land available to. the devisees, it must have its foundation in, and. acquire its efficacy from some special power, retained or acquired by her, to make a testamentary disposition of the estate, proceed to show how the power must be pursued; but they hold that where such will contains any property on which it can operate, although there may be devises in it which cannot take effect, still it is the duty of the probate court to allow it to be proved. The probate of a will,' says Dewey, J., delivering the opinion of the court, 'does not necessarily settle any question of title to real estate, arising under the same; it establishes the due execution of the same by the testator and is conclusive thus far, but as to his title, or his right to devise the property named in the will, it binds nobody who has any adverse interest; questions of that character are to be settled by proper proceedings at law, or in equity.' This doctrine, in respect to wills of married women, does not trench upon the rule, as generally laid down by the courts, and by none more stringently than the court of Massachusetts, whose probate courts, like ours, have complete jurisdiction over the probate of wills of real, as well as personal estate, that the decrees of such courts are conclusive upon all parties, and cannot be collaterally called in question. See cases cited in 1 Jarm. on Wills, 23, and notes."

Applying the rule announced in this case to the instant case, we say that the doctrine in respect to wills of full-blood Indians does not trench upon the rule as generally laid down by the courts, but it must be borne in mind that the full-blood Indian in executing a will which disinherits certain persons has only the power to do so under and according to a prescribed mode, and the law will only recognize his right to devise provided the power has been granted to him. A devise made without the granted consent or power must be held inoperative.

The court in Baker et al. v. The Heirs of Chastang, supra, held:

"We have shown that generally married women cannot devise, except under certain powers, reserved to or acquired by them and when it is manifest that the will, which is set up as a muniment of title, was not made by a feme covert under such circumstances as that the law will recognize her

right to devise, it must be held inoperative, notwithstanding the probate. To hold the decisions of the Orphans' Court conclusive in such cases, would be to devolve upon it the most abstruse and perplexing questions which can arise in the law, and upon which, in many cases, there would be no means of revising its decisions, for if the will is valid as to a portion of the devises, it must be admitted to probate, and upon an issue devisavit vel non out of chancery, as our statute prescribes, the jury would have to pronounce in favor of such will, although it might be invalid as to a part of the bequest or devises. It is not imperative upon the court to grant in such cases a qualified probate, but this is done as a matter of caution. It may grant a general probate, and the question, as to the due execution of the power, will still remain open, as is shown by the cases already cited. We do not think it was intended by the framers of our statute to make the decree, allowing the will of a married woman to be proved, final and conclusive upon the title to lands, which, as a feme covert, she had no right to convey. The English doctrine upon the subject, we regard as correct, and since it has been followed by numerous decisions in other states, we are disposed to adopt it here. believing it conforms better to the law. and to the organization of our courts. The probate is conclusive evidence, as to the existence of the will, and as to all questions concerning its valid execution as a will, arising from mental incapacity and the like, on the part of the testatrix, but it is not conclusive upon the question whether the testatrix could in this mode pass title to real estate. It is conclusive so as to admit the will in evidence, and forestalls all inquiry as to whether it was her will, but it is not conclusive as to the legal operation of such will, as translative of title to the real estate embraced in it. * * *"

To the same effect, see Hegarty's Appeal, 75 Pa. St. Rep. 503-512.

In the case of Fallon v. Chidester, 46 Iowa, 591, the court said:

"The probate of the will, under the statute in force at the time, had the effect to establish its execution, and rendered it admissible as an instrument of evidence in the courts of the state. and nothing more. Code 1851, pars. 1297, 1300. It did not establish. the testamentary character of the instrument, and give validity to a title based upon it. The effect of the will and its interpretation, whereon titles under it rested, were not determined in the proceedings for its probate. These were matters for adjudication when rights and property were claimed under the will. Evans v. Anderson, 15 Ohio State, 324; 3 Redfield on Wills, p. 61; 1 Jarman on Wills, p. 22, et seq. (3 Am. Ed.)." Letts v. Letts, 73 Oklahoma, 176 Pac. 234; Nesbit v. Gragg et al., 36 Okla. 705, 129 Pac. 705; McArthur v.

Scott, 113 U. S. 340, 28 L. Ed. 1015; Hill v. Buckholts et al., 75 Okla. 196, 183 Pac. 42.

The question of execution and attestation involved in the probate proceedings is a determination of whether the will has been signed by the testator, published by him in the presence of witnesses and properly attested by competent witnesses. In a general sense the acknowledgment and approval required by a full-blood Indian by the act of Congress is an act of execution, but it is not part of the execution and attestation of the will as required by the Oklahoma statutes. The county court in probating the will has only to determine whether or not it has been signed by the testator and published by him and attested by witnesses in the manner required by the statutes of Oklahoma. As said by the Supreme Court of Nebraska in construing a will made by an Omaha Indian under an act of Congress requiring such wills to be approved by the Indian Commissioner or the Secretary of the Interior:

"This is in accordance with the purpose of the act of Congress, which has to do with the land and the right thereto, and not with the right and manner of making a will." Moore v. Busse, 154 N. W. 552.

The plain purport and meaning of the act of Congress is not to defeat the right of the full-blood Indian to make a will, but is that the will shall not operate to convey restricted land away from the heirs unless it is approved in the manner designated in the act.

The reading of the statute is that "no will of a full-blood Indian devising real estate shall be valid," etc., but the plain purport of the statute and the only meaning that can be placed upon it is that as to the lands over which Congress has retained control it shall not operate unless approved and acknowledged in the manner designated. Congress has no power to determine what shall or shall not constitute a will within the state of Oklahoma, but it has the power to designate what formalities are necessary for the alienation of restricted lands. In other words, the full-blood Indian is a citizen of Oklahoma. His will, when made in accordance with the laws of Oklahoma, is a will regardless of the requirements of the act of Congress, but if he desires his will to operate upon lands restricted by the federal government, he must comply with the formalities required by the act of Congress. So that the approval and acknowledgment required by the act of Congress is not for the purpose of designating the technical requirements necessary to constitute a will, but merely for the purpose of giving the will validity as a conveyance of restricted lands. If the provision in question were not contained in the act of Congress, a full-blood Indian could make a will according to the laws of Oklahoma, but could not thereby convey his restricted land, because he could not do by will that which he could not do by deed, and the provision for approval and acknowledgment of such a will is merely a substitute for the approval of the Secretary of the Interior required upon deeds of full-blood Indians to their allotted lands.

The federal statute requiring acknowledgment and approval of the county court acting as a federal agency has nothing to do with the due execution of a will as contemplated by the statutes of Oklahoma, but only relates to the manner and method by which the Congress authorizes the alienation of restricted Indian lands by will. A matter in which the county court exercising its probate jurisdiction in admitting a will to probate under the laws of Oklahoma is not authorized to determine the operation or effect, or in any way construe such will as a valid alienation of restricted Indian lands. Under a statute in force in the state of Kansas requiring the consent of the husband that the wife may bequeath and devise more than one-half of her property, it was held that such consent was not to be regarded as part of the will, and that it was unnecessary that such consent should be admitted to probate.

In Keeler et al. v. Lauer, 85 Pac. 541, the Supreme Court of Kansas, in the sixth paragraph of the syllabus, held:

"A consent of the husband that the wife may bequeath and devise more than one-half of her property is not to be regarded as a part of the will, and it is not necessary that it should be admitted to probate."

To the same effect is Neuber v. Shoel (Kan.) 55 Pac. 350.

The rule is well established by this court and by the weight of authority generally that the probate court in admitting a will to probate has no jurisdiction to determine the validity of any bequest thereunder or to determine the effect of the will as a conveyance of real estate.

In re Allen's Will, 44 Okla. 392, 144 Pac. 1055, it is held:

"In a proceeding to probate a will under sections 6210 and 6211, Rev. Laws 1910 (sections 5157 and 5158, Comp. Laws 1909), the only issue triable is the factum of the will or the question of devisavit vel non."

In said case, Judge Sharp, speaking for the court, said:

"It will be noted that the conclusion to be reached upon a hearing of the contest-

is whether the will shall be required or admitted to probate. There is no authority conferred by statute by which the court, upon a hearing of the contest, has authority to construe the will or adjudicate upon the rights of the parties or the validity of the disposition thereof. The latter section of the statute is the same as section 5672, Comp. Laws of Dakota 1887 (section 40, Prob. Code Comp. Laws South Dakota 1910). Construing this section of the South Dakota statute, from which state our statute appears to have been adopted, the Supreme Court of that state, in Irwin et al. v. Lattin et al., 29 S. D. 1, 135 N. W. 759, Ann. Cas. 1914 C. 1044, held that upon a proceeding to probate a will the only matters to be adjudicated were that the will was duly executed and attested and was not procured by fraud; that the testator had sufficient mental capacity to make a will, and had authority to dispose of his property by will; that the attesting witnesses, where required, were competent and credible; and that the evidence was sufficient to sustain the probate. The court cites, in support of its conclusions, the following cases: In re Thompson's Estate, 26 S. D. 576, 128 N. W. 1127, Ann. Cas. 1913B, 446; In re John's Will, 30 Or. 494, 47 Pac. 341, 50 Pac. 226, 36 L. R. A. 242; In re Murphy's Estate, 104 Cal. 554, 38 Pac. 543; Hathway's Appeal, 46 Mich. 326. 9 N. W. 435; Farmer v. Sprague, 57 Wis. 324, 15 N. W. 382; Greenwood v. Murray, Ex'r. 26 Minn. 259, 2 N. W. 945; In re Jones' Estate, 84 Wis. 465, 54 N. W. 917."

This case was followed and approved in Brock v. Kiefer, 59 Okla. 5, 157 Pac. 88. where the court says:

"The only question that can be adjudicated on application to probate the will is whether or not the instrument offered for probate is or is not the last will and testament of the decedent. Whether or not the will conveyed title to the property purported to be conveyed by the will cannot be legally determined on application to probate the will."

In Brock v. Kiefer, supra, the will attempted to convey all of the property of the testatrix away from the husband in violation of section 8341, Rev. Laws 1910, which provides that no woman while married shall bequeath more than two-thirds of her property away from her husband. The husband contested the probate of the will upon that ground, and the court in passing upon the question says:

"But the effect of said section 8341 cannot legally be considered in passing upon a petition to probate a will, as the question of the title to the property sought to be devised can in no wise arise or be determined in an application to probate a will, or in any wise affect the question of probate."

This court in Letts v. Letts, 73 Oklahoma, 176 Pac. 234, says:

"* * * The only issue triable is the factum of the will, or devisavit vel non, and that in such proceeding the court lacks jurisdiction to construe the will or determine the rights of the parties or the validity of the devise therein. This was the law as it existed prior to statehood, and under sections 6210, 6211, Rev. Laws 1910, the issue on the probate of a will is the same; that is, the factum of the will, or the question of devisavit vel non."

To the same effect are: Taylor v. Hilton, 23 Okla. 354, 100 Pac. 537; Nesbit v. Gragg, 36 Okla. 705, 129 Pac. 705; R. C. L. 377.

Under section 12, art. 7, of the Constitution of Oklahoma, the county courts of this state are specifically denied jurisdiction in any action "wherein the titles or boundaries of land may be in dispute or called in question. * * *" It is therefore obvious under the section of the Constitution, supra, that it is beyond the power of the Legislature to confer jurisdiction upon the county courts of this state in probating wills or in any other manner to enter a decree or judgment adjudicating the title to real property wherein the same may be called in question. In re Guardianship of Earler Jackson (Jackson v. Porter et. al.), 87 Okla. —, 209 Pac. 430.

A probate court in this state having jurisdiction of the administration of an estate may, upon application, after legal notice, distribute an estate to the legal heirs as provided by the law of descent and distribution or according to the terms of a will, and such decree is an adjudication of the distributive shares of the heirs unless reversed on appeal. However, such a decree of distribution of Indian lands in this state would be subject to such limitation as the judgment of any other state court attempting to adjudicate title to restricted Indian lands.

The admission of a will to probate determines the due execution of the will as required by the statutes of the state where the will was executed, and determines that the will is in form and terms sufficient to pass title to realty, but the decree admitting the will to probate does not determine that the title to the realty sought to be bequeathed in fact passed by the will. The Court of Appeals of New York, in Re Merriam's Will, 136 N. Y. 58, 32 N. E. 621, in affirming the judgment of the Supreme Court of New York, held:

"The decree for probate determines that the will is. in terms, sufficient to pass realty,

not that it does in fact pass the realty; and the decree will not prejudice persons claiming to be entitled to such realty." Burkett v. Whittemore et al. (S. C.) 15 S. E. 616; Succession of Dr. Henry Skipwith, La. Ann. 209.

The decree admitting the will to probate does not determine that the testator had the power under the law to devise realty or the validity of a particular devise under the will. In Craine et al. v. Edwards et al., 17 S. W. 211, the Court of Appeals of Kentucky held:

"The probate of the will of a married woman merely declares that the will is valid to pass any estate which by law the testatrix had power to devise, and such a proceeding does not estop the heirs from questioning the validity of the devise itself. Mitchell v. Holder, 8 Bush, 362, followed."

A decree admitting a will to probate conclusively determines its validity in the matter of due execution as required by the statute of the state and makes it competent to be introduced in evidence as a muniment of title to real property or to be recorded as conveyance of title. Castro v. Richardson et al., 18 Cal. 478.

Having come to the conclusion that the acknowledgment and approval required by the act of Congress are not elements of due execution and attestation within the purview of the statutes of Oklahoma, and that the act of the probate court in admitting the will to probate does not involve a determination of its acknowledgment or approval as required by the act of Congress, then the question of the validity of the will as a devise of restricted land was not within the jurisdiction of the county court in probating the will, and the judgment of probate cannot operate as a bar to a proceeding in the district court to determine the validity of such devise or for recovery of the land in an ejectment action. The county court has no power or authority to determine the rights of any person in real estate mentioned in the will, nor to determine the title of the property, nor the validity of the will as a conveyance of real property. The county court had no authority to determine the degree of blood of the testatrix or the effect of the will as a disinheritance of the father.

It could no more determine as to whether the will operated to convey the restricted land away from the father of the testatrix than it could to determine the effect of a will in which a husband might attempt to will all his property away from his wife;

and its judgment upon such questions is in excess of its jurisdiction, and cannot be a bar to a proper action in the district court to construe the will or to determine rights to real property. Letts v. Letts, supra; Brock v. Kiefer, supra; Taylor v. Hilton, supra.

In volume 28, Ruling Case Law, sec. 379, the law is stated as follows:

"Since the admission of a will to probate decides nothing but its due execution and publication, the rights of one claiming a share of the estate on the ground that he is not mentioned in the will are not concluded by such decree."

In the case of Lorieux v. Keller, decided by the Supreme Court of Iowa, reported in 5 Iowa, 196, 68 Am. Dec. 696, the Supreme Court of Iowa held that the decree of the court admitting the will to probate was not conclusive as to an heir who was not mentioned in the will, and in discussing the law the court used this language:

"The rights of the party claiming a distributive share of his ancestor's estate, under said section 19, are not concluded by the order of the court admitting the will to probate. Such party may still, by proper proceedings, have the question of his right to a portion of his ancestor's estate determined. The admission of the will to probate decides no question but that relating to its due execution and publication."

In Cyc., vol. 40, page 1373, the law is stated as follows:

"While it is frequently stated that the probate of a will is conclusive of its validity, this statement must be confined to the validity of its execution, as it is well settled that probate is not an adjudication that particular provisions are valid and in fact pass title."

In the case of In re Mount's Will, decided by the Supreme Court of New York, reported in 77 N. E., page 999, the court held that the surrogate court had no power to pass upon the validity of the terms of the will. The court used the following language on page 1000:

"Actions for the construction of a will could be maintained only in courts of equity as ancillary to their jurisdiction over trusts and the right to maintain such suits was subject to limitations and qualifications dependent on the nature of the testamentary disposition, and the attitude of the party invoking the court's action."

In Taylor v. Hilton, 23 Okla. 354, 100 Pac. 537, and heretofore cited in this opinion, Mr. Justice Turner, in writing the opinion, called particular attention to the judgment of the lower court where the court sought

to reverse the question as to whether or not the will was sufficient to transfer the title to the individual allotment of Maggie Taylor, and the opinion in this case states that the court had no jurisdiction to construe or direct the validity of any devises therein.

Jurisdiction is the power to hear and determine. The county court's power to determine the question as to whether or not the instrument presented was the last will and testament of Carry Letty is measured by the requirements of the statutes of Oklahoma. It had no authority or power to determine whether or not the will was valid as a conveyance of land or as to whether or not it operated as a disinheritance, or as to whether or not it was acknowledged and approved in such a manner as to convey restricted land; and its judgment, in so far as it purports to determine these matters, is a nullity and may be attacked in any collateral proceeding.

"Where the record in a case affirmatively discloses the facts to be such that the court was without power in such case to make the order or decree it assumes to make, the order or decree is void and subject to collateral attack," Winters v. Oklahoma Portland Cement Co., 65 Okla. 132, 164 Pac. 965.

The will offered for probate in this case did not in any respect conform with the requirement of the act of Congress that it be approved by and acknowledged before a county judge or other officer designated by the act. If the county court had the power in the proceeding for the probate of the will to determine its validity as a conveyance of restricted Indian lands, its judgment upholding this will as such a conveyance would be void, because it is clearly in direct violation of the act of Congress.

In Kenny v. Miles, 250 U. S. 160, 63 L. Ed. 841, the Supreme Court of the United States, in construing a federal statute in reference to Osage Indian lands, held a judgment of the state court partitioning said lands void, in the following language:

"No approval was given in this instance. In consequence the judgment ordering a partition or sale—it had no other purpose—was inoperative. It could not be executed, and was not binding on any one."

The judgment of the county court admitting the will to probate, and not the will itself, would operate to divest title in the case at bar, if said judgment has the effect as contended for by plaintiffs in error.

An unapproved deed of a full-blood restricted Indian to his allotment is void, and a judgment of the district court declaring it to be a valid deed would not make it such. The act of the district court in conferring the rights of majority upon an Indian minor would not operate to make him sui juris to the extent that he could make a valid conveyance of his allotment. This court has repeatedly said that no state statute can be permitted through its operation · to give validity to a void conveyance of restricted lands. Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 335; Collins Investment Co. v. Beard, 46 Okla. 310, 148 Pac. 846; Jefferson. v. Winkler, 26 Okla. 653, 110 Pac. 755; Truskett v. Closser, 198 Fed. 835, 117 C. C. A. 477, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549.

Under the plain provisions of the federal acts providing the manner by which a full-blood restricted Indian may alienate his allotted lands or convey the same by will it must be conceded that the will in question is void, in that it disinherited the father of the devisor, and if the contention of counsel for the plaintiffs in error is sound, the decree of the probate court of Pontotoc county in admitting the will to probate is the effective means of passing the title to the lands in question to the devisee, and not the will itself, in violation of the provisions of the act of the Congress providing the manner by which such restricted lands may be alienated. It is obvious that the county court in the exercise of its probate jurisdiction in admitting a will to probate has no such jurisdiction or authority.

In Brink v. Canfield, 78 Okla. 189, 187 Pac. 223, at page 226, Mr. Justice Sharp, speaking for the court, says:

"At the time Jack's suit was instituted, there was but one way in which he could alienate his title to the lands which he had inherited, and that was by a deed of conveyance, approved by the court having jurisdiction of the settlement of the estate of the deceased allottee. 35 Stat. at L. 312, c. 199. While the restrictions had been removed from the lands in the sense that Jack had the power of alienation, it could only be consummated and made effectual when approved as pointed out in the foregoing act of Congress. Without the making of a deed, and its approval, no judgment could be rendered, regardless ·of the character of the suit or the issues joined, whereby Jack's title could be divested, he being a full-blood Creek Indian, and the lands being lands allotted to his kinsman, through whom, upon the death of succeeding heirs, his title was derived. Nor could the judgment be given effect in a subsequent legal proceeding, either as an estoppel or as constituting a former adjudication of his title. In other words, in so far as the title to such

lands was concerned the judgment was a nullity, because of a want of power in the court to make it. Any other view would mean the circumvention of the statute prescribing the manner in which such lands may be alienated, and make nugatory the acts of Congress prescribing the manner and terms of conveyances of allotted lands inherited by full-blood Indians."

The reasoning of the above case is applicable in full force to the instant case. If the county court had the power to determine the validity of the will as a conveyance of the restricted lands, and it probated a will which shows on its face that it did not in any respect comply with the requirements of the act of Congress, such judgment would nullify the acts of Congress by which the federal government attempted to retain control over these restricted lands.

The rule is well established by the decisions of this court and the federal courts that in determining the validity of a conveyance of restricted Indian lands the courts will look to the acts of Congress alone._ Smith v. Williams et al., 78 Okla. 297, 190 Pac. 555; Walker v. Brown, 43 Okla. 144, 141 Pac. 681; Molone et al. v. Wamsley, 80 Okla. 181, 195 Pac. 484; Goodrum y. Buffalo, 162 Fed. 817; Tiger v. Western Investment Co., 221 U. S. 286, 55 L. Ed. 738; Parker v. Richard, 250 U. S. 235, 63 L. Ed. 954.

In the case of Mike Blanset v. Oscar Cardin, as guardian of Jesse Daylight, a minor, et al., in the opinion delivered by Mr. Justice McKenna, May 16, 1921, reported June 15, 1921, U. S. Sup. Ct. Adv. Opns., 65 L. Ed., the Supreme Court of the United States said:

"Our conclusion is the same as that of the court of appeals, 'that it was the intention of Congress that this class of Indians should have the right to dispose of property by will under this act of Congress, from restrictions on the part of the state as to the portions to be conveyed, or as to the objects of the testator's bounty; provided such wills are in accordance with the regulations and meet the approval of the Secretary of the Interior.' The court added that the conclusion was in accord with the views of the Supreme Court of the state, referring to Brock v. Keifer, 59 Okla. 5, 157 Pac. 88."

Our conclusion is that a valid title can be acquired to restricted Indian lands only under a conveyance executed in conformity to the applicable provisions of the acts of the Congress relating to such lands. In view of the conclusion reached herein the rule announced in Homer et al. v. McCurtain, 40 Okla. 406, 138 Pac. 807, In re Im-

punnubbee's Estate, 49 Okla. 161, 152 Pac. 346, and other cases in conflict with the rule herein, are overruled.

Finding no error in the judgment of the trial court, the same is affirmed.

HARRISON, C. J., and JOHNSON, MILLER, and ELTING, JJ., concur. McNEILL, J., concurs in the conclusion. PITCHFORD, V. C. J., and KANE, J., dissent.

KANE, J. While I have not much if any fault to find with the law stated in the numerous authorities cited in support of the opinion prepared by Mr. Justice Kennamer, I find myself wholly unable to perceive their applicability to the undisputed facts presented by the record before us. While the case at bar purports to be an action in ejectment, a purely legal proceeding, and it is so treated by the learned Justice, what the plaintiff really seeks to do is to establish heirship and contest a duly probated will, valid upon its face, devising the property claimed to the defendant, who went into and is holding possession under the will.

Statutes varying greatly in the different states prescribe the jurisdiction of courts in the establishment and determination of heirship, or the right to share in the distribution of property left by a deceased person who dies intestate. In this jurisdiction the court having exclusive jurisdiction over proceedings of this character is the county court sitting as a probate court. As the establishment and determination of heirship, or the right to share in the distribution of the estate of a decedent dying intestate is governed solely by statute, the citation of authorities from other states upon this question will not prove useful, unless it is shown that their statutes governing descent and distribution and conferring jurisdiction upon courts in what are commonly called probate proceedings, appear to be the same as ours. In this state the jurisdiction of the county court sitting as a probate court is very extensive. Indeed, there are very few states where the jurisdiction of these courts is so broad. But in the case at bar, as I view it, there is no necessity for construing such statutes, either of this or any other state, for the simple reason that the deceased person leaving the land in controversy did not die intestate, but left a will valid upon its face, which was subsequently probated by the court having jurisdiction over such matters, devising the land to the defendant, who went into possession under the will.

Neither is it necessary to notice the numerous authorities cited in the opinion touch-

ing the legal effect of probate upon a will. That question is settled in this jurisdiction, substantially as held in the authorities cited, by section 1208, Rev. Laws 1910, which provides, in substance, that the county court must admit the will to probate when satisfied from the testimony that the will was executed in all particulars as required by law and that the testator was of sound mind at the date of its execution. In the case at bar, the factum of a will valid upon its face being conceded, there can be no reasonable doubt that the title to the land devised passed by the will itself to the devisee at the time of the death of the testator, and that he immediately acquired the right of possession upon the probate of the will. 40 Cyc. 1995, and cases cited.

Now, starting at this point, it is fairly obvious that in these circumstances, the plaintiff is not entitled to possession of the devised premises as against the defendant, until he gets rid of the will in the manner prescribed by the governing statutes of the state. The will, being valid upon its face, will not break down by its own weight; and, being clear and not obscure or ambiguous in its terms, it cannot be construed away by the will. 40 Cyc. 1995, and cases cited.

In these circumstances the plaintiff is driven to the necessity of commencing an action to set aside, or, in other words, contest, the will in some court having jurisdiction over that sort of an action.

And this is precisely what the plaintiff is seeking to do. He seeks to set aside the will upon a purely legal ground of contest. He alleges that he is the parent and sole heir of the deceased testator, who was a full-blood Indian, and that the will is invalid because it seeks to devise the land to another person without being acknowledged and approved as required by act of Congress of April 26, 1906, section 23, 34 Stat. 137, as amended by the act of Congress of May 27, 1908, 35 Stat. 312. As I see it, the trouble with plaintiff's case is that it was commenced in a court which under the law has no original jurisdiction to set aside a will upon the grounds alleged. That this is a purely statutory ground for contest over which the county court has sole original jurisdiction, clearly appears from section 6219, Rev. Laws 1910, which provides:

"When a will has been admitted to probate, any person interested therein may at any time within one year after such probate, contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved a sworn petition in writing containing the allegations that evidence discovered since the

probate of the will, the material facts of which must be set forth, shows:

"First. That a will of a later date than the one proved by the decedent, revoking or changing the former will, has been discovered and is offered; or,

"Second. That some jurisdictional fact was wanting in the former probate; or,

"Third. That the testator was not competent, free from duress, menace, fraud, or undue influence when the will allowed was made; or,

"Fourth. That the former will was not duly executed and attested."

As I view this case, both the petition of the plaintiff and the undisputed facts clearly show that this is an attempt to contest a will under the guise of an action in ejectment in the district court, which court, as the foregoing statute discloses, has no original jurisdiction to determine the validity of wills. The majority opinion, it seems to me, holds that this may be done. I cannot agree with its ruling.

In England it is well settled by a long series of decisions that the comprehensive jurisdiction exercised by courts of chancery in setting aside other instruments does not extend to wills, and that those courts have no jurisdiction to determine the validity of a will of either personal or real property. 40 Cyc. 1251.

In the United States the courts have uniformly held that the principles established in England apply and govern the cases arising under the probate laws of this country, and that whenever in any state the power to probate a will is given to a probate court, the decree of such court cannot be set aside or vacated by the court of chancery, even on the ground of fraud or mistake, except where there is no adequate remedy at law, or where the circumstances are exceptional. 40 Cyc. 1252.

In the various states jurisdiction over actions to set aside wills is vested in different courts. For example: In Arkansas, Illinois, Kansas, and several other states exclusive original jurisdiction is vested in district or circuit courts; in Alabama and several other states exclusive original jurisdiction is vested in courts of equity; in Oklahoma and the great majority of states exclusive original jurisdiction is vested in probate courts. See 40 Cyc. 1253, and the great number of cases cited on this question. But the courts of all these various jurisdictions are in accord in holding that such proceedings, being purely statutory, can only be brought, and successfully main-

tained, in the court, within the time, and on the ground prescribed in and by the statute which authorizes such actions. 40 Cyc. 1240. The case of John Dean et al. v. John Swayne, 67 Kan. 241, illustrates very well my position in the case at bar. In Kansas, as we have seen, the district court has exclusive original jurisdiction over actions to set aside wills. One John Swayne filed proceedings in the probate court alleging that he was the nephew and only heir in law of the deceased testator; that the devise made by the testator was void because of the uncertainty of the beneficiary intended by said testator to take under the devise. A motion was made to strike this proceeding from the files, which was sustained by the probate court. From this order Swayne appealed to the district court, which court overruled the order of the probate court and reinstated the proceeding. From this action of the district court error was prosecuted to the Supreme Court. The Supreme Court reversed the action of the district court, holding that "The district court has exclusive jurisdiction in actions to contest wills, and such actions must be brought within two years from the probating of the will. The proceeding in this case was an attempt to contest the will and the probate court has no jurisdiction thereof." The only difference between these two cases arises out of the fact that in Kansas the district court is invested by statute with exclusive jurisdiction in actions to set aside wills, while in this state the county court sitting as probate court has exclusive jurisdiction over such actions; there is no difference in principle between them. In both cases the plaintiffs attempt to contest a will in a court not invested with original jurisdiction over such actions, and if this court follows the rule announced by the Kansas Supreme Court, it will reverse the judgment of the district court and remit the plaintiff to his remedy by proper action to set aside the will in the county court. When rightly understood there seems to be no conflicting in the authorities on this question, so far as I can find. As I have hereinbefore pointed out, there are states where the district courts and courts of equity are invested by statute with jurisdiction in actions to set aside wills, and, of course, in those states the jurisdiction of such courts over actions of this sort is sustained. But such authorities are of no weight in this jurisdiction on account of the difference in the statutes of the respective states hereinbefore pointed out. I have refrained from discussing any of the Indian features of the case, because, in my opinion, it does not involve any of the rights

of the plaintiff as an Indian, whatever they may be. I deem it to be too clear for controversy that wherever a situation arises which requires an Indian, of whatever blood, to commence an action to set aside a will upon any of the statutory grounds, he must, like any other citizen, resort to the courts of the state vested by law with jurisdiction over that sort of an action for the purpose of asserting his rights. And this has been the rule in this jurisdiction, both as a territory and a state, applicable to Indian and white citizen alike, for so many years that it has become a rule of property, if this time-honored rule is to be given any consideration whatever. The following are a few of the many cases so holding: Ward v. Board of Commisssioners, 12 Okla. 267, 70 Pac. 378; Homer v. McCurtain, 40 Okla. 406, 138 Pac. 807; Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; In re Byford's Will, 65 Okla. 159, 165 Pac. 194; In re Impunnubbee's Estate. 49 Okla. 161, 152 Pac. 346; Lucas v. Lucas. 65 Okla. 96. 163 Pac. 943.

It seems to me that a decent respect for the rule of stare decisis and the stability of land titles, if nothing more, forbids overruling this long line of decisions at this late day.