**David R. CHANDLER, Appellee,**

v.

**Richard L. DENTON and Edith P. Denton, Appellants.**

**No. 59516.**

Supreme Court of Oklahoma.

May 12, 1987.

As Corrected May 13, 1987.

Rehearing Denied Sept. 16, 1987.

**856**

John C. Niemeyer, John R. Hargrave, Messrs. Foliart, Mills & Niemeyer, Linda G. Alexander, Oklahoma City, for appellee.

Gene Stipe, Oklahoma City, Carl Hughes, Messrs. Hughes, Nelson & Gassaway, Oklahoma City, for appellants.

OPALA, Justice.

Three issues are presented for review on certiorari: [1] When the same operative facts support multiple theories of liability that are governed by different limitation periods, does the savings clause in 12 O.S. 1981 § 100 extend the time for the commencement of an action predicated on those theories that would have been timely pressed had they been actually raised in the original suit? [2] Did the trial court err in admitting into evidence the testimony of certain attorney-client communications that were claimed to be privileged? and [3] Was the jury verdict for the plaintiff excessive and without a proper evidentiary foundation? We answer the first issue in the affirmative and the second in the negative; the third issue is answered in the negative except for the punitive damages verdict; the latter award, found to be excessive, is conditionally affirmed on plaintiff's remittitur.

The appellee, David R. Chandler [Chandler], seeks review by certiorari of the Court of Appeals' decision that reversed a $1,100,030 judgment on jury verdict in his favor, holding that his theories of recovery were barred by the statute of limitations.

## I

### THE ACCOUNTING ACTION
### [CHANDLER I]

On April 6, 1976 Mary Francis Denton, Chandler's former mother-in-law, brought an accounting suit against Chandler, in her capacity as the administratrix of her husband's estate, to recover money allegedly owed to the estate by Chandler who had been the decedent's business partner.

On January 10, 1978 Chandler filed a counterclaim and "cross-petition" and sought damages for assault, battery, extortion and trespass. He alleged that, on June 14, 1976 at 1 a.m., his former brother and sister-in-law, Richard and Edith Denton [Dentons], came to his home, kicked in the front door, committed assault and battery and extorted from him a $32,000 check as payment of the amount claimed to be due in the accounting suit.

On April 19, 1978 the trial court ruled on the mother's-in-law demurrer and her motion to strike Chandler's "cross-petition" by dismissing his claims on the ground that the allegations of his pleadings did not relate to any fiduciary duties in the administration of the estate. The record before us refutes Dentons' argument that Chandler's counterclaim and "cross-petition" was reached and decided on the merits.

Chandler sought reconsideration by motion filed on April 27, 1978. Approximately one year later, *on April 12, 1979,*[1] *the court overruled that motion.* In *Chandler I*[2] the Court of Appeals affirmed this disposition. It concluded that the April 19, 1978 order operated as a dismissal of Chandler's "cross-petition" and counterclaim.

## II

### CHANDLER'S RECOMMENCED LAWSUIT [CHANDLER II]

On August 30, 1979 Chandler filed a separate lawsuit that contained allegations of the June 14, 1976 altercation with his former siblings-in-law [*Chandler II*]. Chandler sought compensatory and punitive damages for assault and battery. The Dentons demurred to this petition on October 12, 1979 asserting that Chandler's action was time-barred. On December 18, 1979 Chandler amended his petition to include his mother-in-law as a party defendant, both individually and as administratrix of her deceased husband's estate. He also sought damages against all three defendants for assault, battery, trespass, extortion, damage to property and intentional infliction of mental and emotional distress. Chandler sought to consolidate this action with the then still pending accounting suit. The Dentons demurred to the amended petition. After a hearing on various motions, the trial court on April 24, 1980 (a) refused to consolidate the two lawsuits; (b) overruled the Dentons' demurrer except as it related to Chandler's assault-and-battery ground for recovery; (c) ruled that any

assault-and-battery predicate for liability was barred by the statute of limitations and (d) determined that trespass, extortion and infliction of emotional distress were all timely pressed and available theories of Chandler's claim.

On September 15, 1981 Chandler added, by the last amendment to his petition, a new ground for recovery—invasion of privacy. In this amendment he also alleged that on the day the Dentons broke into his home they held a knife to his genitalia and threatened to castrate him if he did not pay the money that they insisted he owed.[3] The mother-in-law was later dismissed with prejudice as a party defendant, and the cause came to trial on September 21, 1982. The $1,100,030 jury verdict awarded Chandler explicitly compensates him for harm asserted by him under the legal rubrics identified below:

| | |
|---|---|
| Trespass | $ 25.00 |
| Intentional infliction of mental distress | $ 500,000.00 |
| Invasion of privacy | $ 100,000.00 |
| Wrongful taking of property | $ 5.00 |
| Punitive damages | $ 500,000.00 |

## III

### THE RATIONALE OF THE COURT OF APPEALS IN CHANDLER II

The Court of Appeals reversed the judgment on jury verdict in *Chandler II* and directed the trial court to render, on remand, its judgment for the Dentons. The appellate court reasoned that all of Chandler's theories of liability had been time-barred. The assault-and-battery predicate

1. This is the date which triggers here the one-year time limit established by 12 O.S. 1981 § 100 for recommencement of an action. It is the date *the motion to reconsider was denied.*

2. The case to which we refer as *Chandler I* was captioned as follows: Mary Frances Denton, Administratrix of the Estate of Raymond Wallace Denton, Deceased, Plaintiff, David R. Chandler, Defendant and Third Party Plaintiff, Appellant, vs. Mary Frances Denton, Third Party Defendant, and Richard Denton and Edith Denton, Third Party Defendants-Appellees, and was docketed in this court as No. 55,280.
The unpublished Court of Appeals' opinion affirmed the trial judge's order that dismissed Chandler's counterclaim and "cross-petition" in

the accounting suit. The trial judge explicitly ruled that the June 14, 1976 events *had no relation* to the accounting suit and hence, under the Code of Civil Procedure in force *at that time,* could not be litigated by counterclaim brought in that suit.

3. Chandler testified at trial that, after the Dentons broke into his home in the middle of the night, he was knocked down on the floor by Richard Denton and was repeatedly struck by both Dentons. He testified that, while he was being held on the floor, his pants were pulled down and Edith Denton took his genitalia in her hand and threatened to castrate him with a knife that she held in her other hand. These actions were denied by the Dentons.

of liability was held to have been barred by limitations when it was originally pled by counterclaim in the accounting suit brought on January 10, 1978. Since the operative event alleged in his "cross-petition" occurred on June 14, 1976, the one-year statutory limit [4] for bringing a claim predicated on an assault-and-battery theory of recovery had already lapsed. As to the remainder of Chandler's theories of liability—trespass, invasion of privacy, wrongful taking and detaining property, and intentional infliction of emotional distress—the Court of Appeals noted that these were subject to a two-year statutory limitation.[5] The court held that this time limit could be extended by the savings provision in 12 O.S. 1981 § 100. The cited statute affords a claimant an additional year to recommence *a timely-filed* lawsuit that has been dismissed otherwise than on the merits even though the claim would have been time-barred if it were then asserted for the first time.[6]

Applying this analytical framework to the theories of recovery raised by Chandler's petition and subsequent amendments in *Chandler II*, the Court of Appeals found all of them time-barred. Since the only grounds for recovery—other than assault and battery—which were brought in *Chandler I* within two years of the operative event were *extortion* and *trespass*, the Court of Appeals reasoned that *only those theories* could have been saved by recom-

mencement of the action within one year of April 12, 1979, the date the claims were originally dismissed otherwise than on the merits. Of the various theories raised by Chandler's pleadings in the instant suit, *extortion* and *trespass* were not tendered until September 15, 1981. The Court of Appeals accordingly held that Chandler had clearly failed to bring them within the one-year limit prescribed in 12 O.S. 1981 § 100. The remaining theories of recovery—*intentional infliction of mental distress* and *property damage*—were raised for the first time on December 18, 1979. Since the two-year period of limitation had lapsed before these theories were first tendered in the trial court, the Court of Appeals held that they also were barred and Chandler could not hence benefit from the § 100 savings clause.

■■■ At the outset of our review we notice that the judgment roll [7] in the 1976 case [*Chandler I*] was not incorporated into the record on this appeal and is not before us. The contentions of the Dentons invoke the protection of a legal bar claimed to be afforded by the "judgment" in that case. It was thus incumbent upon the Dentons to designate for inclusion in this record the judgment roll in *Chandler I* and to make it a part of the record in this appeal.[8] Our inquiry into the prior deci-

---

**4.** 12 O.S. 1981 § 95 [Fourth].

**5.** 12 O.S. 1981 § 95 [Third].

**6.** The terms of 12 O.S. 1981 § 100 provide in pertinent part:

"If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff ... may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed."

**7.** A post-appeal inquiry into the meaning of a judgment is confined to the face of the "judgment roll," a term synonymous with "record proper"; judgment roll consists of "... the petition, the process, the return, the pleadings subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court; ..." 12 O.S.1981 § 32.1, renumbered in 1972 from 12 O.S. 1981 § 704, Okla.Sess.L.

1972, Ch. 119 § 5; *Mid-Continent Pipe Line Co. v. Seminole County Excise Bd.*, 194 Okl. 40, 146 P.2d 996, 1000 [1944]; *Veiser v. Armstrong*, Okl., 688 P.2d 796, 800 [1984]; *Timmons v. Royal Globe Ins. Co.*, Okl., 713 P.2d 589, 592 [1986] and *Mayhue v. Mayhue*, Okl., 706 P.2d 890, 895 [1985].

Once a judgment has become final for want of an appeal or in consequence of an appellate court's decision—as in *Chandler I*—any controversy over the meaning and effect of that judgment must be resolved by resort *solely* to the face of the judgment roll. The meaning of a judgment is to be divined from the terms expressed in the instrument as construed with other parts of the judgment roll. *Timmons v. Royal Globe Ins. Co., supra* at 592, and *Dickason v. Dickason*, Okl., 607 P.2d 674, 677 [1980].

**8.** It is the duty of the appealing party to procure a record that is adequate to support the quest for the corrective relief sought. *Chamberlin v. Chamberlin*, Okl., 720 P.2d 721, 724 [1986] and *King v. Sherrill*, Okl., 496 P.2d 803, 804 [1972].

sion's legal effect cannot extend beyond the instruments that are comprised within the judgment roll of the case. Because the record on this appeal does not contain the *Chandler I* judgment roll, we may not look beyond the Court of Appeals' opinion in *Chandler I* as a source for ascertaining what actually stood adjudged in the prior lawsuit.[9] Since the *Chandler I* opinion describes but a few pleadings, there is scarcely enough here before us for a searching and meaningful review of the Dentons' claim that *Chandler II* was barred by the 1976 judgment in *Chandler I*.[10] In short, we must conclude that the appellate court's opinion in *Chandler I*—the only source available for our scrutiny here—does not provide a sufficient foundation to overcome the law's presumption of correctness that

attaches to the trial court's judgment in *Chandler II*, the case now under review.[11]

## IV

### THE LIMITATIONS ISSUE

At the outset of our analysis we must determine here the meaning of the term "cause of action" as it affects the provisions of 12 O.S. 1981 § 100.[12] The Court of Appeals apparently ascribed a narrow meaning to that phrase. It no doubt assumed that each *theory of recovery* pled by Chandler constituted *a distinct cause of action or a separate claim*. We disagree.[13]

 Oklahoma jurisprudence uses the *transactional approach* for its defini-

Because our inquiry into a judgment's meaning cannot extend beyond the instruments that comprise the trial court's record proper, proceedings *dehors* the judgment roll—those not apparent from its "four corners"—may not be invoked for consideration. There can be but *one* appellate review on the full transcript of trial proceedings. If it were not for this salutary rule, vanquished litigants could vex their victorious adversaries with successive appeals for repeated, piecemeal review of a judgment.

9. While the record on a prior appeal of the same action does not constitute a part of the record in the subsequent appeal, this court can take judicial cognizance of its former opinions to inform itself of the binding effect that is due its past pronouncements. *Chamberlin v. Chamberlin, supra* note 8 at 724; *Timmons v. Royal Globe Ins. Co., supra* note 7 at 592; *Sneed v. Yarbrough,* 164 Okl. 253, 23 P.2d 703, 705 [1933] and *Oklahoma City Electric Gas & Power Co. v. Baumhoff,* 21 Okl. 503, 96 P. 758, 760 [1908]. The same principle applies here to the opinions of the Court of Appeals. This doctrine is but a narrow exception to the general norm by which, on consideration of an appeal, the appellate court is strictly limited to the record before it. See, *Eckel v. Adair,* Okl., 698 P.2d 921, 923–924 [1984].

10. The Court of Appeals in *Chandler I, supra* note 2, quoted in part from the trial court's ruling from which the appeal was taken. The quoted language indicated that Chandler's "cross-petition" and counterclaim was dismissed on the ground that his claim in the accounting suit had no relation to the mother's-in-law fiduciary duties as administratrix of her husband's estate. The trial court noted in its ruling that the Dentons' demurrer to Chandler's "cross-petition" and counterclaim had been mooted by the dismissal of his claims.

There is nothing in the *Chandler I* pronouncement to indicate that the trial court's ruling vis-a-vis the Dentons was upon the merits. The trial court in *Chandler II* reached the same conclusion in its April 24, 1980 prejudgment order. There, the court had under consideration, *inter alia,* the effect of 12 O.S. 1981 § 100 on Chandler's recommenced action. The court found that "the Plaintiff [Chandler] failed in C–76–23 B 'otherwise than upon the merits', and therefore had a one-year period to refile."

11. An appellate court must indulge in the presumption that the ruling of the trial court is correct. Thus, in the absence of a complete record, *all* presumptions operate in favor of the trial court's judgment. *Cox v. Warford,* 34 Okl. 374, 126 P. 1026 [1912]; *John Deere Plow Co. v. Owens,* 194 Okl. 96, 147 P.2d 149, 154 [1944]; *Armstrong v. Gill,* Okl., 392 P.2d 737, 738 [1964] and *Georgia-Pacific Corp. v. Lumber Products Co.,* Okl., 590 P.2d 661, 666 [1979].

12. See footnote 6 *supra* for the text of 12 O.S. 1981 § 100.

13. The very spirit and essence of "fact pleadings" under the pre-1984 Code of Civil Procedure, 12 O.S. 1981 §§ 1 et seq., the Code in force at the time this action was decided, was correctly captured and rendered in *Doss Oil Royalty Co. v. Texas Co.,* 192 Okl. 359, 137 P.2d 934, 939 [1943], where we said that "[w]hen a plaintiff *states and proves the facts, he is not required to designate the theory upon which relief may be granted. He is entitled to any relief which the facts may justify....* This is the very heart of the code.* To require him to correctly name his theory would be a step backward toward the old practice of pleading forms of action, the very thing the code was designed to abolish." [Emphasis supplied.]

tion of a "cause of action." [14] The operative event that underlies a party's claim delineates the parameters of his cause of action.[15] This conceptual approach ensures that litigants will be able to assert different theories of liability without violating the purposes of the statute of limitations.[16] That statute is designed to ensure that a party has notice of a claim against him within a statutory period of time [17] and an adequate opportunity to prepare his case before potential evidence is lost or becomes stale.[18] The *wrongful act analysis* of a "cause of action" does not conflict with the purpose of statutory limitations.

▮ In accordance with the Code of Civil Procedure in force at the time, a plaintiff must allege the operative events upon which he relies for his theories of recovery within the time period prescribed by the applicable statute.[19] At this point, the party required to respond to the allegations is put *on notice of the factual setting* underlying the legal demands pressed against him. Having been given an adequate opportunity to conduct discovery, the party is not prejudiced if the plaintiff, at a later time, adds any new theory of liability which rests upon the very same operative events. Our decisional law, which we reaffirm today, supports the use of a transactional approach in defining "causes of action." [20]

▮ Chandler first alleged the pertinent operative events of his claim on January 10, 1978. Since the operative event occurred on June 14, 1976, Chandler failed to bring his assault-and-battery claim *before* the one-year limitations period had run. This ground for recovery was hence correctly held to be time-barred. The remaining theories of liability pressed by Chandler were subject to a two-year statutory limit and Chandler timely brought them within that period.

▮ The dismissal of Chandler's counterclaim and "cross-petition" in the accounting suit became *final* on *April 12, 1979*. Since that claim was dismissed "otherwise than upon the merits," he had, in conformity to the terms of 12 O.S. 1981 § 100, *until April 12, 1980* to refile his cause of action. Chandler's original petition in this case was brought on August 30, 1979. His amended petitions were filed on October 19, 1979, December 18, 1979 and September 15, 1981. The Dentons' brief does not dispute that, by the relation-back doctrine of the Oklahoma jurisprudence, *all* amendments to the petition which pertain to the same transaction as originally plead take effect in a § 100 recommencement suit—just as in *any other action*—from the time the action was commenced. See 12 O.S. 1981 § 317 and *Dewailly v. First National Bank of Coffeyville, Okl.*, 338 P.2d 1110, 1113 [1959]. *All* these pleadings alleged substantially the same operative event as that which was originally pled as a

---

**14.** *Retherford v. Halliburton Co.*, Okl., 572 P.2d 966, 968–969 [1978].

**15.** See footnote 14 *supra.*

**16.** *C & C Tile Co. v. Independent Sch. D. No. 7 of Tulsa Cty.*, Okl., 503 P.2d 554, 559 [1972].

**17.** See footnote 16 *supra.*

**18.** See footnote 16 *supra.*

**19.** *Doss Oil Royalty Co. v. Texas Co., supra* note 13.

**20.** In *Springfield Fire & Marine Ins. Co. v. Chadwick*, 194 Okl. 392, 152 P.2d 277, 279 [1944], the plaintiff had a fire insurance policy on two homes. Following a fire that destroyed one of the homes and damaged the other, plaintiff brought a suit seeking to recover on the policy for the destroyed home. After the limitations period had lapsed, the plaintiff sought to amend her petition by adding another element of loss from the home that was damaged. We held that the addition of another loss element to the claim was not barred by the statute of limitations. We noted that the defendant was not prejudiced because the operative event alleged—*a loss from the same fire*—had not been substantially changed. See, *Underside v. Lathrop*, Okl., 645 P.2d 514, 515 [1982].

In *Retherford v. Halliburton Co., supra* note 14, we defined "cause of action" with reference to the occurrence underlying the litigant's claim. *Culver v. Mid-Continent Casualty Company*, Okl., 526 P.2d 496 [1974] is not inconsistent with the transactional approach for defining a cause of action. In *Culver* we held that an amendment to a petition, which sought to include damages from a claim based on *different operative facts*, was barred by the statute of limitations.

counterclaim and "cross-petition" in the accounting suit. Since the same cause of action as that which had been timely brought in the accounting suit and dismissed otherwise than upon the merits was later refiled within one year of the dismissal, Chandler was entitled to the benefit of the savings provision in § 100. We hence hold that the trial court correctly allowed Chandler to pursue in *Chandler II* those theories of liability [21] that had not been time-barred when the original suit was brought, even though these theories were not previously tendered to the trial court in *Chandler I*.[22]

# V

## ISSUES NOT ADDRESSED BY THE COURT OF APPEALS

Two grounds for reversal were left unaddressed by the Court of Appeals' opinion. The first of these was error in admitting the testimony of certain attorney-client communications between Edith Denton and her former lawyer, and the second was lack of evidentiary support for the jury verdict as well as its excessiveness.

## A

## THE CHALLENGED COMMUNICATIONS WERE NOT PRIVILEGED AND WERE HENCE PROPERLY ADMITTED

When Edith Denton testified that she neither placed a knife close to Chandler's genitalia nor threatened to castrate him, Chandler called Dentons' former lawyer, David Denton, as a rebuttal witness. An *in camera* hearing followed to ascertain whether the testimony to be elicited from David Denton was protected by the attorney-client privilege. The trial judge, conceding that the issue called for a close scrutiny of underlying facts, ruled that the communication was admissible as unprotected by privilege because third persons were present at the time and place of its occurrence. David Denton was then permitted to testify at trial that Edith Denton had talked to him about the events in controversy and had told him she had threatened Chandler in the manner described.

Dentons assert that Edith Denton's communications with their former counsel were confidential and that she did not waive the protection afforded her by the attorney-client privilege. Chandler, on the other

---

**21.** The Dentons argue that the one-year limitations period applicable to the assault-and-battery theory of liability should also be applied to the intentional-infliction-of-mental distress ground for recovery. This contention was specifically rejected in *Williams v. Lee Way Motor Freight*, Okl., 688 P.2d 1294 [1984]. Although I dissented from that holding, I am bound by it today.

Chandler's trespass and wrongful-taking-of-property theories are governed by a two-year limitations period pursuant to the express terms of 12 O.S. 1981 § 95 (Third), which provide in pertinent part:

"Within two-years: an action of trespass upon real property; an action for taking, detaining or injuring personal property, ..."

Chandler's invasion-of-privacy claim falls within the intrusion-upon-seclusion prong of the group of actionable torts commonly referred to as invasion of privacy. See Restatement (Second) of Torts § 652B and Comment B to that section; Keeton, *Prosser and Keeton on Torts*, § 1117 at 855 [5th ed. 1984]. This type of invasion of privacy concerns unreasonable and highly offensive intrusions upon the solitude or seclusion of another. *Id.* The claim is governed by a two-year limitations period because it falls with-

in the express terms of § 95 (Third) ("an action for injury to the rights of another...."), and also because of the rationale adopted by the majority in *Williams, supra,* (for a tort not specifically enumerated in § 95 (Fourth) which is held governed by § 95 (Third)). See also *Polin v. Dun & Bradstreet, Inc.,* 511 F.2d 875 [10th Cir.1975] which applied § 95 (Third) to an invasion-of-privacy claim.

Chandler's punitive damages plea is governed by limitations that apply to the claim upon which it is rested. *Smith v. Warehouse Market, Inc.,* Okl., 586 P.2d 724 [1978] and *Western Union Telegraph Co. v. Garrett,* 59 Okl. 50, 158 P. 619, 621 [1916]; see also *Alexander v. Jones,* 29 F.Supp. 690, 692 [E.D.Okl.1939] and *Willoughby v. Sinclair Oil & Gas,* 89 F.Supp. 994, 996 [1950]. *The Dentons do not argue that, under the cumulative theories pressed below, the verdict gives Chandler multiple recovery for identical elements of damage claimed under different theories of liability.* We express no opinion concerning the presence of any overlapping elements of recovery.

**22.** We note that the new pleading code, 12 O.S. Supp.1984 § 2015(C), clearly adopts the transactional approach in delineating the parameters of a litigant's cause of action.

hand, urges the evidence was admissible for two reasons: (a) Edith Denton's testimony was perjurious and her former counsel had an ethical responsibility to come forward with that disclosure[23] and (b) there was no privilege because third persons, who were not necessary to the attorney-client relationship, were present at the time the communication took place.

We begin with the fundamental premise that the attorney-client privilege is designed to shield the client's confidential disclosures and the attorney's advice.[24] The privilege belongs to the client and not to the lawyer. It may be waived only by the client.[25] When communications are made during the existence of an attorney-and-client relationship the privilege continues to protect them from disclosure even after that relationship has been terminated.[26]

In order to establish the privilege, it must be shown that the status occupied by the parties was that of attorney and client and that their communications were of a confidential nature.[27] Whether a communication is privileged from disclosure is for the trial judge to decide in light of a preliminary inquiry into the existence and validity of the privilege.[28] The burden to establish the privileged status of testimony sought to be excluded rests on the party asserting it.[29] The trial judge's ruling is conclusive in the absence of an abused discretion.

As a general rule, if a client chooses to make or to receive a communication to or from his attorney *in the open presence of unnecessary third persons, the communication ceases to be confidential* and is not entitled to the protection afforded by the rule of confidentiality.[30] This is so because a third person does not stand in any confidential relationship to the client.[31] The fact that a client communicates with his attorney *within the hearing*

**23.** Chandler relies on *Cole v. State,* 50 Okl.Cr. 399, 298 P. 892 [1931]; *State v. Henderson,* 205 Kan. 231, 468 P.2d 136 [1970]; *Lawson v. State,* Okl.Cr., 492 P.2d 1113 [1972] and Code 7 and Disciplinary Rule DR–7–102 (4–7), Code of Professional Responsibility, 5 O.S.1981, Ch. 1, App. 3.
Because we hold in Part V(A) the trial court correctly determined that the presence of third persons operated as a waiver of the attorney-client privilege, we need not address the issue whether Dentons' counsel had an ethical duty to inform the court about the allegedly perjurious statements.

**24.** *Marcus v. Harris,* Okl., 496 P.2d 1177, 1179 [1972]; *McSpadden v. Mahoney,* Okl., 431 P.2d 432, 440 [1967]; *Wolverine Oil Co. v. Parks,* 79 Okl. 318, 193 P. 624 [1913]; *Pearson v. Yoder,* 39 Okl. 105, 134 P.2d 421 [1913]; *Gonzales v. Mun. Ct. of Los Angeles J. Dist.,* 67 Cal.App.3d 111, 136 Cal.Rptr. 475, 479 [1977] and *Bolyea v. First Presbyterian Church of Wilton,* N.D., 196 N.W.2d 149, 154 [N.D.1972].

**25.** *People v. Duarte,* 79 Ill.App.3d 110, 34 Ill.Dec. 657, 669, 398 N.E.2d 332, 344 [Ill.1977] and *State v. Love,* 275 S.C. 55, 271 S.E.2d 110, 112 [1980], *cert. denied,* 101 S.Ct. 272.

**26.** *Fox v. Forty-Four Cigar Co.,* 101 A.2d 184 [N.J.1923] and *Re Young's Estate,* 59 Or. 348, 116 P. 95 [1911], *reh. den.,* 116 P. 1060 [Ore. 1911].

**27.** *Sapp v. Wong,* 62 Hawaii 34, 609 P.2d 137, 140 [1980].

**28.** *State v. Love, supra* note 25 and *Sapp v. Wong, supra* note 27.

**29.** *State v. Tensley,* 249 N.W.2d 659, 661 [Iowa 1977]; *State v. Moore,* 45 Or.App. 866, 609 P.2d 866, 868 [1980]; *Colman v. Heidenreich,* 269 Ind. 419, 381 N.E.2d 866, 869 [1978]; *Waldmann v. Waldmann,* 48 Ohio St.2d 176, 358 N.E.2d 521, 523 [1976]; *People v. Duarte, supra* note 25 at 343, and *State v. Love, supra* note 25 at 112.

**30.** *Gonzales v. Mun. Ct. of Los Angeles J. Dist., supra* note 24; *Parnacher v. Mount,* 207 Okl. 275, 248 P.2d 1021, 1024 [1952]; *Joy v. Litchfield,* 189 Okl. 122, 113 P.2d 974, 975 [1941]; *Howsley v. Clark,* 167 Okl. 371, 29 P.2d 947 [1934]; *Ratzlaff v. State,* 122 Okl. 263, 249 P. 934 [1926]; *Kratzer v. Kratzer,* 595 S.W.2d 453, 456 [Mo.App.1980]; *State v. Murvin,* 304 N.C. 523, 284 S.E.2d 289, 294 [1981] and *Insurance Co. Etc. v. Superior Court, Etc.,* 108 Cal.App.3d 758, 166 Cal.Rptr. 880, 884 [1980].
*Generally, communications between an attorney and his client made in the presence of a third person, whose presence is known to the defendant, are not privileged from disclosure.* 8 Wigmore, Evidence [McNaughton rev. 1961] § 2311; McCormick on Evidence (Hornbook series) Ch. 10 § 91 at p. 189 [1972] and Annot., 141 ALR 553.

**31.** *People v. Diercks,* 88 Ill.App.3d 1073, 44 Ill. Dec. 191, 194, 411 N.E.2d 97, 101 [1980].

*range of third persons* and makes no attempt to prevent the communication from being overheard *is indicative* that the conversation was not intended to be confidential.[32] The law's inference is not altered by the fact that the third person may not have heard the communication.[33] In short, the presence of third persons—be they relatives or friends of the client—who are not essential to the transmission of information or whose presence is not reasonably necessary for the protection of the client's interests, will belie the necessary element of confidentiality and vitiate the claim to an attorney-client privilege.[34] Where there is no confidence reposed, no privilege can be asserted.

During an *in camera* hearing below it was revealed that David Denton had several ties with the Dentons. At the time of the incident in contest, he was representing the mother-in-law in the accounting suit. Dentons then sought his legal assistance in the matter involving Chandler. David Denton was also related to the Dentons—Richard is his first cousin and the mother-in-law is his aunt. David Denton testified that, to the best of his recollection, two other persons were present when Edith Denton talked to him about the incident with Chandler—i.e., her mother-in-law and her father. The mother-in-law was sitting at or near the table where the communication took place and her father was either sitting or standing. On cross-examination

David Denton testified that he could not say *"with absolute certainty"* that they were at the table or heard the discussion. When the trial judge would not allow the mother-in-law to testify about whether she heard the communication in question, Dentons made an offer of proof as to what her testimony would show. According to their proffer, she would testify that she did not hear Edith Denton make any such statement to David Denton. No proffer was made as to Edith's father.

The testimony of Edith Denton and her former attorney was conflicting on the issue whether third persons, who were present, heard the communications between them. The trial court chose to believe the lawyer's account. It cannot be said, on the record before us in this case, that Edith Denton intended the communication—made in the open presence and within the hearing range of both her mother-in-law and her father—to be confidential. The record does not reveal that any of the strangers was acting as Edith Denton's confidential agent, nor does it show that their presence was necessary to enable the parties to communicate with one another. Whether these third persons were sitting at the same table or standing nearby, they were all placed *within the hearing range* of the communications and, so far as Edith knew, they could have heard all that was said. The testimony of the lawyer was hence properly admitted. Because the

---

**32.** The mere relation of attorney and client does not raise a presumption of confidentiality. The circumstances are to indicate whether by implication the communication was intended to be confidential. *People v. Decina,* 138 N.E.2d 799, 807, 157 N.Y.S.2d 558, 138 N.E.2d 799 [N.Y.App. 1956]; *O'Connor v. Immele,* 43 N.W.2d 649 [N.D.1950] and 8 Wigmore, Evidence [McNaughton rev. 1961] § 2311, *supra* note 30.

**33.** In *Baumann v. Steingester,* 213 N.Y. 328, 107 N.E. 578, 579 [N.Y.App.1915], communications between a lawyer and his client about the drawing of a will were made in the presence of a third person. The trial court excluded the testimony of the attorney as to these communications in a suit brought to construe the will after the client's death. On appeal the court held that the evidence should have been admitted for the reasons that (1) *the third person was not a confidential agent of the client;* (2) *no attempt*

*was made by the client to prevent the third party from making the communication* and (3) *even though the third party testified she "'did not pay very much attention'" to what was said this did not change the situation because she "was within hearing and, so far as the testatrix [client] knew, heard all that was said."* The court noted that if the client had desired her communication with her attorney to be confidential, she could have asked the third person to withdraw from the room or have communicated with her attorney when that person was not present. The client did not do either. *The court held that the fact that the client's instructions to her attorney were given in the presence and within the hearing of a third party is a circumstance indicating that the communication was not made in confidence.*

**34.** McCormick on Evidence 2d Ed. (Hornbook Series) Ch. 10 § 91 at p. 189 [1972], *supra* note 30.

communication was not made in confidence, it stood unprotected by privilege.

## B

### THE VERDICT IS NOT LACKING IN EVIDENTIARY SUPPORT AND, EXCEPT FOR THE PUNITIVE DAMAGES AWARD, IS NOT EXCESSIVE

Dentons argue that the damages awarded by the jury are excessive—because of the influence of passion or prejudice—and rest upon little or no "reasonable" competent evidence. They assert that Chandler's self-serving statements of his damages are unsupported by "reasonable competent medical evidence" to substantiate his distress and that the testimony of his witnesses constitutes nothing more than general conclusions on the part of lay persons who are incompetent to testify as to Chandler's emotional distress.

 We are not persuaded by these arguments. An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress.[35] The right to recover is not dependent on physical injury.[36] The extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress episodes took place.[37] Expert medical testimony ordinarily is not required where damages for emotional distress are present.[38] In most cases, jurors from their own experience are aware of the extent and character of the disagreeable emotions that may result from a defendant's outrageous conduct. Severe emotional distress may be shown either by physical manifestations of the distress or by subjective testimony.

 Our review of the evidence in this case convinces us there is here ample proof to support the verdict. Chandler testified that he was afraid to live in his home, particularly since he had stopped payment on the extorted check and feared that the Dentons would come back and follow through with their threats. Consequently, he moved out of his home to a neighbor's house where he stayed several days. He had been offered a job in the town of his residence but did not feel that he could continue to live there because of his concerns about the Dentons. A police officer who investigated Chandler's complaint of the breaking-and-entering and assault episodes testified that Chandler's emotional state was one of concern for his own safety. A local bank president testified that Chandler was shaken up by the experience and feared for his life. The person with whom Chandler stayed immediately after his encounter with the Dentons testified as to Chandler's emotional state and physical injuries following the incident. According to his testimony, when Chandler came to his home immediately after the injurious episodes, Chandler was in such a disturbed state of mind that he had lost control of his bowels. In sum, there was significant evidence of Chandler's emotional distress. Much of this anguish simply could not be measured in terms of medical expenses; indeed, the very nature of the tort of outrage makes it impossible to quantify damages by reliance mainly on expert medical evidence or by a mere addition of the incurred medical expenses.

 The Dentons also assert that the damages award of $1,100,030 was excessive and *made under the influence of passion or prejudice.* When confronting this

---

**35.** Oklahoma recognizes intentional infliction of emotional distress as an independent tort. The delict, also known as the tort of outrage, is governed by the narrow standards of Restatement (Second) of Torts § 46 [1977]. See *Eddy v. Brown*, Okl., 715 P.2d 74 [1986]; *Breeden v. League Services Corp.*, Okl., 575 P.2d 1374 [1978]; *Williams v. Lee Way Motor Freight, supra* note 21 at 1298; *Munley v. ISC Financial House, Inc.*, Okl., 584 P.2d 1336 [1978] and *Dean v. Chapman*, Okl., 556 P.2d 257 [1976].

**36.** *Williams v. Lee Way Motor Freight, supra* note 21 at 1296.

**37.** See Restatement of Torts (Second) § 46, Comment K.

**38.** *Davis v. Gage*, 106 Idaho App. 735, 682 P.2d 1282, 1288 [1984].

argument in the past, we have consistently held that a verdict should not be overturned on the ground of excessiveness unless its amount is so flagrantly outrageous and extravagant that it clearly shows the jury to have been actuated by passion, partiality or prejudice.[39] When the facts and circumstances of this case are measured by this standard, the recovery for actual damages does not appear excessive.

## C

## THE PUNITIVE DAMAGES AWARD IS EXCESSIVE AND SUBJECT TO REMITTITUR

While we find the award for actual damages supported by competent evidence and not grossly excessive, we cannot approve the $500,000 verdict for punitive damages.

Punitive damages are allowed for the benefit of society as punishment. They are designed to provide a restraint upon the transgressor and to serve as a warning and example to the wrongdoer.[40] A punitive damages verdict lies peculiarly within the province of the jury and it will not be casually interfered with on appeal when it is claimed to have been actuated by passion or prejudice.[41] Unless the verdict appears to be grossly excessive or the result of the jury's passion, prejudice or improper sympathy, it will not be conditioned by a remittitur.[42] But where an award is found so out of proportion as to be unconscionable, a conditional affirmance, subject to remittitur, may be required.[43]

Much of the proof of damages claimed for the intentional infliction of emotional distress and invasion of privacy consists of intangible elements that may be established by subjective evidence. The $600,000 recovery allowed by the jury under this legal rubric, although neither unconscionable nor excessive, is indeed ample

and generous. When the $500,000 punitive damages award is added to the other amounts recovered, the total verdict becomes so grossly excessive that we cannot in reason allow it to stand. In light of the generously and amply compensated loss for Chandler's actual harm, we find the exemplary damages allowed by the jury not to be responsive to the purpose of civil punishment. Judgment on jury verdict is hence affirmed insofar as it allows recovery for actual damages ($600,030); insofar as the verdict awards punitive damages, it is also affirmed but on the condition that the plaintiff file below, within 20 days of the date our mandate is issued herein, his remittitur of all punitive damages in excess of $250,000; if no remittitur be timely filed, the entire judgment on jury verdict is to be treated as reversed and the cause remanded for a new trial.

Certiorari is granted; the Court of Appeals' opinion is vacated and the trial court's judgment on jury verdict is affirmed subject to plaintiff's remittitur of punitive damages.

DOOLIN, C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON J., concurs in the answer to question [1], dissents from the answer given to question [2] and concurs in the answer to question [3];

HODGES and SIMMS, JJ., dissent because they view all of Chandler's claims as barred by the statute of limitations; and

HARGRAVE, V.C.J., disqualified.

39. *Roring v. Hoggard,* Okl., 326 P.2d 812, 816 [1958] and *Tulsa City Lines v. Geiger,* Okl., 275 P.2d 325, 328 [1954].

40. *Oller v. Hicks,* Okl., 441 P.2d 356, 360 [1967] and *LeFlore v. Reflections of Tulsa, Inc.,* Okl., 708 P.2d 1068, 1077 [1985].

41. *Timmons v. Royal Globe Ins. Co.,* Okl., 653 P.2d 907, 919 [1982] and *LeFlore v. Reflections of Tulsa, Inc., supra* note 40 at 1077.

42. *Basden v. Mills,* Okl., 472 P.2d 889, 896 [1970] and *LeFlore v. Reflections of Tulsa, Inc., supra* note 40 at 1077.

43. *Timmons v. Royal Globe Ins. Co., supra* note 41; *LeFlore v. Reflections of Tulsa, Inc., supra* note 40 and *Moyer v. Cordell,* 204 Okl. 255, 228 P.2d 645, 651 [1951].